ELSIE MANDELBAUM, Respondent, *v.* SIDNEY WEIL, Appellant.

First Department, March 7, 1924.

**Physicians and surgeons — action to recover damages for malpractice in operation to remove tonsils — local anæsthetic was administered — needle broke while administering anæsthetic — defendant removed tonsils and not finding needle called in another doctor — needle was discovered by X-ray but could not be removed — malpractice not shown.**

Malpractice on the part of a physician in performing an operation to remove tonsils was not shown in an action to recover damages, where it appears that the physician administered a local anæsthetic, which was the general practice in the removal of tonsils; that while administering the anæsthetic the needle broke and a part remained in the patient's throat; that after trying to locate the part of the needle that remained in the throat the physician removed the tonsils but failed to tell the patient that a part of the needle was still in her throat until a few hours later when he called at her house and informed her of that fact; that he had an X-ray picture taken at his own expense, and employed another doctor who was unable to remove the needle; and that the physician then took the patient to a hospital where further effort was made to remove the needle, but without success.

APPEAL by the defendant, Sidney Weil, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of March, 1923, upon the verdict of a jury for $1,500, and also from an order entered in said clerk's office on the 15th day of March, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Whiteside & Stryker* [*Lloyd Paul Stryker* of counsel], for the appellant.

*Israel H. Perskin,* for the respondent.

MARTIN, J.:

This is an action against a physician for alleged malpractice. Plaintiff consulted defendant about her throat. He advised her to have her tonsils removed. She displayed some anxiety about the operation, but defendant assured her that if she were nervous on the following day when the operation was to be performed, he would have an assistant present. She related her experience in substantially the following manner, the exact language being paraphrased in some instances for the sake of brevity: " I sat down on an ordinary stool and he started taking out my tonsils. I told him, ' Well, I am a little nervous,' so he said, ' Oh, well, we will manage it all right.' Then he started putting a needle in my throat and then I was in great pain, then all of a sudden he took out the tonsils and I went home. It was around one or half past one. Late that afternoon he came to my house and he informed me that the needle broke off and it must be in my throat, he having looked all over the floor and could not find it. He took me to 149th Street to a place where X-ray photographs are taken. He had an X-ray taken and then I went home. Then later again that afternoon around half past six or seven o'clock he took me to another doctor and they tried to remove the needle. They were unsuccessful. They then telephoned to the Lebanon Hospital in the Bronx and I went up there and that same evening after administering ether to me, an operation was performed in an effort to remove the needle. I remained in Lebanon Hospital from the last day of July until the 5th day of August. The effort to remove the needle was unsuccessful."

The complaint sets forth numerous specifications of alleged negligence but they are mainly variations in statement of a few such charges. The trial court summarized the alleged malpractice in his charge to the jury as follows: " The specifications I think may be reduced to three: *first,* that the doctor, had he exercised reasonable skill and care, would have given a general instead of a local anæsthetic. * * * The second specification * * * is that the doctor should have known of the breaking of the needle. * * * The third specification * * * is that the defendant should have extracted the needle, or made efforts to extract the needle, before he removed the tonsils."

After the jury had been instructed by the court, plaintiff's counsel said: " We are satisfied with the charge as made."

At the trial plaintiff's reliance was principally on the breaking

of the hypodermic needle, but no part of the alleged malpractice referred to in the complaint is predicated upon the actual breaking of the needle. The sole expert produced by the plaintiff testified: " It is possible to happen to anybody, that a needle break. Q. And you don't criticise him for that? A. Not for breaking the needle."

The first specification of malpractice, as the case was submitted to the jury, was that the doctor should have used a general anæsthetic and not a local one. That was negatived by several doctors and in respect to it plaintiff's expert modified his testimony and retracted much of what he had said. He testified: " Q. What would you say were some of those results that sometimes arise from a general anæsthesia? A. Death in the operation from the anæsthetic, hemorrhage. Q. Anything else? A. Shock. Q. Anything else? A. That is all. Q. How about a pulmonary lung abscess? A. That comes afterwards. That can come from either condition."

His contention was that in this case it would have been proper to use a local anæsthetic instead of a general one, if the patient had not displayed nervousness. Plaintiff stated that she was slightly nervous but the doctor said she was not. In any event, it was proved that the general practice is to use a local anæsthetic instead of a general one in removing tonsils from an adult.

The second specification, as the court summarized the allegations of negligence for the jury, was that defendant should have known of the breaking of the needle and should at once so have informed plaintiff. The testimony of defendant is that he not only knew the needle had been broken, but in the exercise of good judgment he believed it proper not to communicate that fact to plaintiff until she had an opportunity to recuperate through rest and sleep. It is apparent that he did know of the breaking of the needle, for later in the day he went to plaintiff's house, told her about it, and proceeded to locate it and arrange for its removal. He secured, at his own expense, the services of a well-known physician to remove it. He showed his anxiety to do everything possible for his patient and did not spare expense to himself. Malpractice was not shown by the fact that the needle broke or that part of it remained in plaintiff's body.

The third specification of negligence, set forth in the charge is that defendant should have extracted or made efforts to extract the needle before he removed the tonsils. Immediately upon discovering that the needle had broken, he did all in his power to locate and extract it. Such efforts having failed, he decided to proceed with the operation in the hope that he might find the needle in the tonsils when they were removed. The fact that he

was unable to locate the needle would not justify an abandonment of the operation. The correctness of his judgment was shown by subsequent developments, for the part of the needle which had broken off could not be found in the tissues of plaintiff's neck without the aid of X-ray plates, and after its position had been ascertained the efforts to remove it were not successful.

Under the circumstances, we are of the opinion that malpractice was not established, and that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SMITH, MERRELL and FINCH, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.