LAURA ROOK, an Infant, by WILLIAM E. ROOK, Her Guardian ad Litem, Appellant, *v.* THE STATE OF NEW YORK, Respondent. (Claim No. 23384.)

WILLIAM E. ROOK, Appellant, *v.* THE STATE OF NEW YORK, Respondent. (Claim No. 23385.)

Third Department, April 27, 1938.

*Lusk, Buck, Ames & Coon* [*Clayton R. Lusk* of counsel], for the claimants, appellants.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden* and *James H. Glavin, Jr., Assistant Attorneys-General,* of counsel], for the respondent.

HEFFERNAN, J. Claimants, father and daughter, respectively, have appealed from judgments of the Court of Claims dismissing their claims on the merits.

On June 4, 1930, the infant claimant, then a child of eleven years of age and weighing seventy-four pounds, was a student in one of the grammer schools of the city of Cortland. It had been the practice of students at the Cortland Normal School to conduct physical training classes for practice work in the grade schools of the city. The principal and the various teachers of the normal school were employees of and paid by the State of New York. The teachers of the normal school organized and planned an annual event known as play day, which was held on the normal school

grounds. The pupils of certain grade schools of the city, including the school which the infant attended, were required by the teachers of the normal school to participate in the annual event. The program of events was prepared under the supervision of normal school teachers. Various competitive games were played by the students, among others one known as blanket toss. This game consists of a child being placed in a blanket, the blanket is then held by several other children, the child is thrown in the air and is caught in the blanket on the downward fall. The infant claimant was directed by those in charge to participate in this game. She protested to those in charge but her protests were unheeded. It was while she was taking part in this game that the child was injured. Although the normal school owned equipment for playing other games it had no blankets suitable for the blanket toss, and a teacher from that institution who had charge of this particular feature of the physical training program brought one from her home for that purpose. It is undisputed that this blanket was torn. Another blanket, likewise defective, was also procured. The uncontradicted testimony is that the infant claimant was thrown into the air a distance estimated by various witnesses at from five to six feet on three separate occasions and that when she descended the third time her right foot went through one or both blankets, struck the ground and as a result this foot was seriously and permanently injured. A claim for damages on her behalf and one on behalf of her father for expenses and loss of services were presented to and filed with the State pursuant to special acts known as chapters 536 and 546 of the Laws of 1933. In each claim a charge of negligence is made against the State " in permitting and directing that an unsafe game be played in an unsafe and dangerous manner and with unsafe and dangerous equipment and appliances and in failing to issue proper directions and instructions forbidding the use of such blankets and such dangerous equipment."

The judge of the Court of Claims who heard the testimony recommended that awards be made in favor of both claimants. Two other judges of that court determined that there was no liability, apparently on the theory that the infant was not injured at the time or in the manner claimed by her as indicated by the following excerpt from its opinion: " After a careful consideration of all the evidence we have reached the conclusion that there is not a fair preponderance thereof to sustain a finding that the State of New York, through its employees, was negligent nor to hold that infant claimant was injured in the manner alleged."

The Attorney-General takes the position that the State is not liable because, as he claims, competent teachers and supervisors were employed. The question before us is not whether the State was negligent in selecting incompetent or unfit employees or servants to perform the services for which they were employed. We are dealing here with the doctrine of *respondeat superior*. Section 12-a of the Court of Claims Act expressly provides that the State " waives its immunity from liability for the torts of its officers and employees," and expressly " assumes liability for such acts " and confers jurisdiction upon the Court of Claims " to hear and determine all claims against the State to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of the officers or employees of the State while acting as such officer or employee."

The evidence on behalf of claimants overwhelmingly establishes that the State's employees were negligent in directing the infant claimant to participate in a dangerous game with defective, insufficient and inadequate equipment. One of the blankets used in the game was brown, the other gray. The infant claimant testified that the brown blanket had a tear in it. She also said that when she got into the blanket she was thrown into the air about five or six feet, just over the heads of the girls and that when she came down for the third time her right foot and leg went through the tear in the blanket, through the lower blanket and struck the ground. She testified: " The first time I was thrown up I hollered and told the teacher I didn't want to be thrown again, and she said to stay in, that I was only going to be thrown twice more and the third time when I came down my foot and leg went through both blankets and struck the ground." Claimant's testimony as quoted was fully corroborated by nine other school children. In fact the State made no serious attempt to contradict it. These children also said that the infant claimant injured her right foot as she fell and that afterwards they noticed that she limped.

The principal of the normal school and four of his associates of the faculty were judges at this play day meet. Each of these persons knew that the blanket toss game was being played. The teacher in charge of the physical training testified that she had charge of the blanket throwing and that she received her instructions and directions from another teacher. She testified that she never saw blankets in the normal school suitable for tossing children and that under the direction of her superior she brought a blanket from her home for that purpose which was torn and that she procured another blanket from a sorority house. She was unable to say whether the blankets were inspected or not. She did testify,

however, that the blanket which she supplied became quite torn during the game and that she suspended the play because of this torn blanket in order to have an opportunity to procure another. She said the second blanket was a gray color and that she put the two blankets together and used them. She also said that the blanket which she procured from the sorority house was thinner and was not as heavy as the one which she supplied and that it was not suitable to be used alone.

The State also seeks to escape liability on the ground that the child injured her foot by stepping on a tack some time before the play day meet. The child's mother testified that at the time of her daughter's injury her health was good. She said, however, that possibly two months or ten weeks prior to June 4, 1930, the child stepped on a tack and injured her *left* foot and that the wound was cauterized by Dr. Didama. She said the child sustained no further injury until June fourth when the athletic meet at the normal school took place. She testified that when her daughter returned from that event she was limping and complained but the mother said she did not anticipate serious injury. Apparently she applied home remedies to the foot. On Sunday she noticed that her daughter was walking on the side of her foot and she said that this was the Sunday following the accident. That was really the first time the mother took notice of the foot. She then called Dr. Didama. At this time the foot was red and swollen and the daughter complained of pain. On the seventeenth of June the daughter was taken to a hospital in Syracuse. At Syracuse Dr. Kelley made an X-ray examination and the child was treated by Dr. Coons, a bone specialist. While the child was in Syracuse she suffered a great deal and was kept under hypodermics. It took two people to hold the child's foot. Apparently the child was in great pain at this time. The child came home on the twelfth of July after having an operation performed by Dr. Coons and Dr. Reid. After the operation the child cried continuously. After being brought home she was put to bed and later taken to the Cortland Hospital where an operation was performed. Dr. Coons and Dr. Wattenberg performed this operation.

Much is made of the fact by the State that on the cross-examination of the mother she testified that in giving the child's history to the hospital authorities she stated that the child injured her foot by stepping on a tack and made no mention of the claim that she was injured in falling through a blanket. The mother explained this by saying that she had just seen Dr. Coons before she gave the hospital statement and that she gave Dr. Coons the history of the blanket toss injury and that she supposed· that the hospital authori-

ties wanted a history of *previous* injuries. It is not disputed that the mother gave Dr. Didama a history of the injuries sustained by the daughter in the blanket toss when he was first called to attend the child. It is also undisputed that she gave a like history to Dr. Coons. At the time of the trial that physician was dead. The mother's testimony is corroborated by a letter written by Dr. Coons on January 20, 1932, to one of claimant's attorneys in which he said that the child's condition was " the result of an injury."

That this child was seriously injured is not disputed. Dr. Didama, who was first called to treat the child, concluded that it was a surgical case and he suggested the employment of Dr. Coons. This doctor operated on the child on June 18, 1930, and found that she was suffering from acute osteomyelitis of the right heel bone and septicemia. In the operation the entire diseased heel bone was removed. The doctor stated that by reason of this operation the heel will not be able to properly discharge its normal functions and that to that extent there is a permanent deformity. This doctor also advised a physician representing the State as to his diagnosis of the child's case as acute infectious osteomyelitis of the right os calsis and stated that it is the result of an injury.

Dr. Reid said that he was present at the operation performed by Dr. Coons on June eighteenth and that there was considerable swelling in the child's heel; that the operation consisted of an incision in the side of the heel for the purpose of establishing drainage. The doctor described the condition as traumatic osteomyelitis which is a pus infection of the bone caused by an injury. In response to a hypothetical question the doctor testified that in his opinion the condition of the child's foot was due to the injury received on June fourth on the Cortland Normal School grounds. He also said that if the child had been injured by the tack in her foot six weeks prior to the 17th of June, 1930, and if the wound was cauterized and the child suffered no discomfort thereafter his opinion would not be changed in any way. He said that the traumatic osteomyelitis came from the injury to the child's foot when she was tossed in the blanket and that the evidence as to the tack in the heel would make no difference. In fact he said that if the child had a tack in her foot six weeks before and no lameness resulted for six weeks that osteomyelitis could not result.

Dr. Sornberger testified that he is an X-ray specialist and that the X-ray showed a very advanced bone destruction in the heel of the right foot which is known as os calsis.

Dr. Wattenberg, a physician at Cortland, who practices exclusively in surgery, testified that he had had cases of traumatic osteomyelitis and was familiar with it; that the infant claimant

was suffering from traumatic osteomyelitis and that a tack in the child's heel four weeks prior to the time of her injury at the normal school grounds would not be a competent producing cause of osteomyelitis coming on at the time that it did.

The medical testimony establishes that the child suffered a great deal of pain and that her injuries are permanent. Her right foot is five-eighths of an inch shorter and one-half an inch lower than the left. There is practically no lateral motion in the foot. It will be always difficult for her to walk and there is no hope of improvement in that respect. It is most significant that the State made no attempt to refute the evidence as to the child's injuries.

On the testimony it seems clear to us that the State is liable. (*Van Dyke* v. *City of Utica*, 203 App. Div. 26; *Rapisardi* v. *Board of Education of City of New York*, 242 id. 647.) No claim is made, nor could one be successfully urged, that either the infant or her parents were guilty of contributory negligence. This child was compelled to take part in a dangerous amusement. That form of athletic activity may be aptly suitable for the diversion of the spectators gathered together to witness the boisterous proceedings in connection with the initiation of candidates into a secret society, but to compel small children, ranging from ten to fourteen years of age, to participate in this horseplay is extremely dangerous. The affair partakes more of the antics of a clown than of the recreational activities of an organization dedicated to the education of the youth of the State.

The judgments appealed from should be reversed on the law and the facts, with one bill of costs, and judgments directed in favor of claimants, with costs. Because of the delay that has occurred between the trial of these causes and their determination — a delay of practically four years — this court in its decision will determine the damages without remitting the causes to the Court of Claims for that purpose.

Hill, P. J., Rhodes, Crapser and Bliss, JJ., concur.

The judgments appealed from are reversed on the law and facts, with costs as of one action in favor of claimants, and judgments are directed in favor of the claimants, with one bill of costs for the following sums, for the claimant William E. Rook, $2,500 and for the claimant Laura Rook, $15,000.

In the case of both claimants the court hereby reverses findings of fact No. 1, 3, 9, 10, 13, 15, 16, 17, 18, 22 and 23 contained in the decision of the court below.

The court also reverses findings of fact contained in the conclusions of law No. 1 in such decision and disapproves of such decision.

The court also reverses the following findings of fact and conclusions of law made pursuant to the State's requests in the case of Laura Rook and No. 1, 3, 5, 6, 9, 11, 14, 16 and 18 in the State's requests to find and also the findings of fact contained in the following conclusions of law made by the court and contained in the State's requests to find No. 4, 6, 8, 12, 13, 14 and 15 and the court hereby disapproves of such conclusions of law.

In the case of Laura Rook the court hereby finds the following facts contained in claimant's proposed findings of fact presented to the court and No. 17, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50 and 51.

The court also makes the following conclusions of law contained in the proposed conclusions presented to the court below and No. 2, 3, 5, 6, 7, 8 and 9.

The court also finds that Laura Rook has sustained damages in the sum of $15,000 and judgment is rendered in her favor for that amount.

The court hereby reverses the following findings of fact found by the court below pursuant to the State's requests to find in the claim of William E. Rook and No. 1, 3, 5, 6, 9, 11, 14, 16, 18 and 22.

The court also reverses the findings of fact contained in the proposed conclusions of law submitted by the State to the court below in the case of William Rook and No. 3, 5, 7, 11, 12, 13 and 14.

The court also makes the following findings of fact in the case of William E. Rook submitted to the court below by the claimant and No. 6, 17, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 52, 53, 54, 55 and 57.

The court also makes the following conclusions of law in the case of William E. Rook contained in the decision submitted by such claimant to the court below and therein No. 2, 3, 5, 6, 7, 8, 9 and 11.

The court hereby finds that the claimant William E. Rook was damaged by reason of the injuries sustained by his daughter in the sum of $2,500 and judgment is hereby rendered in his favor for that amount, with costs.