BERTHA LIUBOWSKY, Administratrix, etc., of HENRY LIUBOWSKY, Deceased, Respondent, Appellant, *v.* THE STATE OF NEW YORK, Appellant, Respondent.

(Claim No. 25491.)

Third Department, October 31, 1940.

John J. Bennett, Jr., Attorney-General [Harold Greenstein and Leon M. Layden, Assistant Attorneys-General, of counsel], for the appellant, respondent.

Samuel L. Greenberg, for the respondent, appellant.

CRAPSER, J. The circumstances out of which the claim arose are as follows: Decedent was admitted to Mt. Sinai Hospital in the city of New York on June 30, 1938, where he was operated on for hernia. Post-operative psychosis developed and decedent was transferred to Bellevue Hospital on or about July 16, 1938. Examination at Bellevue Hospital revealed that decedent had a syphilitic condition; thereafter decedent was committed to Rockland State Hospital by order dated July 26, 1938, and was admitted therein on July 27, 1938. Decedent was confined as a patient at said institution until November 10, 1938, on which date he died.

There is no controversy between the parties hereto that the drug "salvarsan" was administered to the decedent in unneutralized form by persons employed at the said State institution, that said drug caused the death of decedent, and, further, that the treatment prescribed for decedent was neo-salvarsan and not salvarsan.

The State contends that it is not liable to respond in damages to the claimant because (1) its duty is discharged by the employment of competent medical doctors and nurses and that its position is the same as that of a public hospital corporation, and (2) the death of decedent did not result in pecuniary loss to the claimant.

Section 12-a of the former Court of Claims Act ▮ is as follows:

" § 12-a. Waiver of immunity from liability for torts of State officers and employees. The State hereby waives its immunity from liability for the torts of its officers and employees and consents to have its liability for such torts determined in accordance with the same rules of law as apply to an action in the Supreme Court against an individual or a corporation, and the State hereby assumes liability for such acts, and jurisdiction is hereby conferred upon the Court of Claims to hear and determine all claims against the State to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of the officers or employees of the State while acting as such officer or employee. Such claim must be submitted pursuant to the procedural provisions of the Court of Claims Act. Nothing herein contained shall be

construed so as to affect, alter or repeal any provision of the Workmen's Compensation Law."

The State contends that in its operation of Rockland State Hospital, having furnished competent and well-qualified doctors, nurses and attendants, it discharged its duty to the claimant and to the deceased and it relies upon the case of *Schloendorff* v. *New York Hospital* (211 N. Y. 125). That case was decided by the Court of Appeals in 1914. The case of *Phillips* v. *Buffalo General Hospital* (239 N. Y. 188) was decided in 1924. Section 12-a of the Court of Claims Act, in effect at the time of the accrual of the cause of action herein, became a law in 1929. Prior to that time the State of New York had not waived its immunity from suit, nor had it assumed liability for the torts of its officers and employees.

Section 12-a of the Court of Claims Act in effect provides that the doctrine of *respondeat superior* does apply to the State; hence the cases cited by the State in its brief are no longer an authority under the set of facts existing in this case.

The case of *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163) holds that the rule of *respondeat superior* applies in favor of a beneficiary injured by the tort of a mere servant or employee functioning in that character. (*Rook* v. *State of New York*, 254 App. Div. 67.)

The record raises no controversy between the parties hereto as to the negligence of the defendant's servants and employees of the Rockland State Hospital in administering the wrong drug to the claimant's intestate and raises no question that such negligence caused his death. It was administered to five persons before the mistake was discovered; two of the five died in the building where the drug was administered within about a half hour afterwards and the other three went to the hospital; of those who went to the hospital two died and one recovered. The deceased was one of those who went to the hospital and died in the hospital. The drug that was administered came to the clinic room from the pharmacy of the Rockland State Hospital. The drug that was administered was not neutralized; had it been recognized as salvarsan it would have been neutralized but it was supposed to have been neo-salvarsan and, therefore, it was not neutralized.

The Court of Claims awarded the claimant damages in the sum of $1,500 and $150 funeral expenses, with interest thereon from the date of death, in all the sum of $1,764.50.

The damages to be awarded the claimant are covered by the provisions of section 132 of the Decedent Estate Law. Each case depends upon its own peculiar facts. The deceased was married, his widow is forty-six years old, there are two children, two boys,

one fifteen and one fourteen. He had always supported the wife and children from the date of marriage in 1921 until the date of his death in 1938. The decedent came to this country from Leipsig, Germany, in 1936. In Germany he had been engaged in the export of hardware and household furnishings, a business that he owned himself and employed sometimes five or six persons. He continued that business until Hitler came into power in 1933. During his lifetime in Germany he was making sufficient money so that his wife was able to keep a nurse and a governess and other servants. His children went to a private school. The wife left with the children for America in 1937. They paid thirty-six dollars a month house rent when they first came here, having three rooms, and the husband contributed twenty dollars a week and sometimes more. The husband had an importing office for hardware in this country. He had desk room in an office for which he paid five dollars a week. The husband had never been ill from the time of his marriage until he went to the Mt. Sinai Hospital. The wife visited him in all the hospitals and they always conversed together during her visits.

Dr. Nathan Savitsky was sworn for the claimant; he testified that unneutralized salvarsan was considered a deadly poison. Various records were introduced in evidence concerning the deceased's physical condition and the doctor said that he had studied them carefully previous to coming to court. He was asked a hypothetical question, assuming the truth of the facts set forth in the records introduced in evidence, whether he could state with reasonable certainty that the giving of the unneutralized six-tenths gram dosage of salvarsan intravenously was the competent producing cause of the death of the deceased and he answered, " Yes, sir." The doctor testified that he had seen patients with general paresis, of the type that the deceased had, recover and that they had gone back and done the same work as they did before being afflicted with that condition. The witness said that he could state with reasonable certainty that Henry Liubowsky could have been cured of his paresis to such an extent that he could have been discharged from the hospital and would have been able to adjust himself to his former level, his previous job and his position in society. He based his answer upon the undisputed exhibits in the case.

The court has found upon sufficient evidence the following: " 36. That at the time of the death of Henry Liubowsky, his condition was such that it was possible for him to have recovered sufficiently to leave the hospital, resume his place in society and continue at the vocation in which he was engaged."

The decedent was earning at the time he was taken ill about $2,000 a year. In the judgment of the court the award of the

Court of Claims was inadequate as compensation under the circumstances in this case. The award should be modified by increasing the sum from $1,500 to $5,000 and the sum of $150 funeral expenses, with interest thereon at the rate of six per cent from the date of death of said deceased, to wit, November 10, 1938, and accordingly as modified the judgment should be affirmed, with costs to claimant.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; FOSTER, J., dissents with a memorandum.

FOSTER, J. (dissenting). I am not prepared to agree with the theory that section 12-a of the Court of Claims Act paves the way for liability in this case. As I read the section, it means only that the State waives its sovereign immunity for liability for the torts of its employees, and consents to have its liability determined in accordance with the same rules of law that apply to an action against an individual or corporation. The rules meant are obviously not rules of practice, but substantive rules of law which go to the question of liability. *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163) holds nothing to the contrary.

It is still the law that a public hospital corporation is not liable to a patient for the torts of physicians and nurses if the hospital has used proper care in the selection of such physicians and nurses. (*Schloendorff* v. *New York Hospital*, 211 N. Y. 125; *Mills* v. *Society of New York Hospital*, 242 App. Div. 245; affd., 270 N. Y. 594; *Phillips* v. *Buffalo General Hospital*, 239 id. 188.) The test in this case, therefore, is whether liability would exist if the hospital in question was an ordinary public hospital instead of a State institution. I think the answer must be in the negative in so far as the acts of doctors and nurses are concerned. There is of course the conduct of another party involved — the pharmacist at the hospital. Assuming, however, that he may have been guilty of negligence, I doubt if he can be considered merely as an administrative employee. He practiced a profession, and quite logically the State should be no more liable for his acts than it would for those of physicians and nurses. It merely had the duty to exercise care in his selection. The fact that he resided at the hospital is of no moment. (*Schloendorff* case, *supra*.)

For these reasons I dissent from the opinion for affirmance as modified, and vote to dismiss the claim.

Award modified by increasing the sum from $1,500 to $5,000 and the sum of $150 funeral expenses, with interest thereon at the rate of six per cent from the date of death of said deceased, to wit, November 10, 1938, and accordingly as so modified judgment affirmed, with costs to claimant.