ABRAHAM KAPLAN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28821.)

Court of Claims, March 20, 1950.

*Desmond T. Barry* and *James A. Treanor* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Howard F. Danihy* and *Melvin J. Carro* of counsel), for defendant.

SYLVESTER, J. Claim has been filed herein to recover damages for personal injuries sustained through the alleged negligence of a State physician.

Claimant had been admitted as a mental patient to the Brooklyn State Hospital on February 15, 1947. In the course of receiving electric therapy, he sustained an injury to a tendon in the right shoulder. On March 28, 1947, an operation was performed upon claimant by Dr. Mulle, of the hospital staff, for the purpose of correcting this condition. While in the process of drilling necessary holes in the head of the humerus bone, to which the torn muscle could be fastened, the drill point broke. The surgeon continued the operation without, however, removing the drill point, since he decided that the patient's condition did not allow the extra operative time for its removal. Thereafter, infection set in, requiring a series of operations at other hospitals, until finally the drill point was removed and a fusion of the right shoulder joint was effected.

Claimant attributes negligence to the State (1) because of the breaking of the drill and in permitting its point to remain in the humerus, and (2) for the reason that the postoperative care rendered him at the State institution was performed in a careless and negligent manner, the State having failed to render customary and proper postoperative care.

It is asserted that the breaking of the drill during the operation was due to the negligence of the State physician performing the operation. As to this act, the doctrine of *res ipsa loquitur* is said to apply. It is sufficient to say that the State assumed its burden of going on with this phase of the case. There is medical evidence that pieces of metal, including broken drill points, have often been allowed to remain in the bone. In the judgment of the doctor, the patient's condition did not then warrant the removal of the drill tip. Moreover, the breaking of the instrument might have been due to several causes; namely, an inherent defect, the

negligence of the surgeon or sheer accident. There is an absence here of any evidence indicating the particular cause and no presumption of negligence due to the breaking of the drill may be indulged. (*Benson* v. *Dean,* 232 N. Y. 52; *Noonan* v. *Dessloch,* 289 N. Y. 620; *Mandelbaum* v. *Weil,* 208 App. Div. 409.) In *Benson* v. *Dean* (*supra*) POUND, J., for a unanimous court, said (pp. 57–58) : " The evidence of the first operation coupled with the presence of the broken needle in the abscess standing by itself might have suggested that proper care had not been taken and might have been enough to put defendant to his proof. (*Goldstein* v. *Pullman Co.,* 220 N. Y. 549, 554.) Common sense suggests that the condition discovered by Dr. Saphir was incompatible with successful surgery and medical treatment. But when the evidence of the defendant's surgeons came into the case with a reasonable explanation showing what may happen when the proper degree of care and skill is actually exercised, the possible inference of negligence from the breaking of the needle alone was driven out and the jury should have been so instructed. The rule *res ipsa loquitur* put upon the defendant the burden of going on with the case (*Davis* v. *Kerr,* 239 Penn. St. 351), but in the absence of medical evidence to the contrary, it must be assumed on this appeal that the breaking of the needle was not due to negligence."

The more serious item of negligence concerns the postoperative care accorded the claimant. The evidence establishes that the infection that developed in claimant's arm was neither properly diagnosed nor treated. The record discloses a condition of varying temperatures for many days with penicillin injections for infection while the wound was draining. Though an entry in the hospital records revealed an infectious condition several days prior to April 15, 1947, the patient received but negligible attention in the form of dressings and administration of the penicillin. The medical testimony is agreed that where a foreign body is permitted to remain in the bone, sound practice dictates that X rays should be taken sometime after the operation to ascertain its location and its involvements. This was not done. X rays would have revealed the bone infection and involvement, with the end result that the foreign body and the involved part of the bone would have been removed. It was only after the patient was discharged on May 9, 1947, when he consulted private medical care, that it was realized that the wound was of an infectious nature. The medical proof establishes that the State was remiss in failing to pursue the indicated course of treatment.

The consequence of its neglect necessitated several additional operations and the ensuing permanent fusion of the right shoulder joint by insertion of a Smith-Peterson nail.

The State contends that it is well settled in this jurisdiction that no liability attaches to it for the negligence of its physician in the performance of a professional function. It recognizes that where the negligence of the doctor arises out of the exercise of a mere administrative act, as distinguished from medical treatment, the hospital may be liable — for then the doctrine of *respondeat superior* is applicable. (*Ranelli* v. *Society of New York Hosp.*, 295 N. Y. 850; *Volk* v. *City of New York*, 284 N. Y. 279.) That the doctor is an independent contractor, with consequent freedom from liability on the part of the hospital for his negligent acts in the course of his professional treatment, appears to be firmly established in the law. (*Schloendorff* v. *Society of New York Hosp.*, 211 N. Y. 125; *Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188; *Volk* v. *City of New York, supra.*)

However, in dealing with the waiver of immunity provision (Court of Claims Act, § 12-a, and its successor § 8) and its effect on the general rule of liability for the negligent professional acts of State physicians, nurses and pharmacists, the provision has been construed to encompass liability for such acts and to require the State to respond in damages (*Liubowsky* v. *State of New York*, 260 App. Div. 416 [3d Dept.], affd. no opinion, 285 N. Y. 701; *Robison* v. *State of New York*, 263 App. Div. 240 [4th Dept.]). In the *Liubowsky* case (*supra*) the court, per CRAPSER, J., stated (p. 418): " The State contends that in its operation of Rockland State Hospital, having furnished competent and well-qualified doctors, nurses and attendants, it discharged its duty to the claimant and to the deceased and it relies upon the case of *Schloendorff* v. *New York Hospital* (211 N. Y. 125). That case was decided by the Court of Appeals in 1914. The case of *Phillips* v. *Buffalo General Hospital* (239 N. Y. 188), was decided in 1924. Section 12-a of the Court of Claims Act, in effect at the time of the accrual of the cause of action herein, became a law in 1929. Prior to that time the State of New York had not waived its immunity from suit, nor had it assumed liability for the torts of its officers and employees.

" Section 12-a of the Court of Claims Act in effect provides that the doctrine of *respondeat superior* does apply to the State; hence the cases cited by the State in its brief are no longer an authority under the set of facts existing in this case.

" The case of *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163) holds that the rule of *respondeat superior* applies in favor of a beneficiary injured by the tort of a mere servant or employee functioning in that character. (*Rook* v. *State of New York*, 254 App. Div. 67.) "

The *Liubowsky* case (*supra*) appears to interpret former section 12-a of the Court of Claims Act (now superseded by section 8) to apply to doctors and nurses, as well as to employees, rejecting the notion that the doctor in the hospital is to be regarded as an independent contractor. That is, the doctor is thus brought within the rule of *respondeat superior,* unless the pharmacist, with whose negligence the State is also sought to be charged, can be said to be in the servant class as distinguished from the doctor and the nurse. The opinion does not suggest it, nor is the thought expressed that the negligent act was performed as an administrative rather than as a professional function. Present section 8 of the Court of Claims Act is coextensive in its terms with former section 12-a. If it is to be construed to impose liability upon the State for the negligent act of the doctor in the performance of his professional duties, then it means that the State has not only permitted itself to be sued, but that its liability is to extend beyond that of the ordinary public hospital (cf. *Dillon* v. *Rockaway Beach Hosp.,* 284 N. Y. 176, *infra; Volk* v. *City of New York, supra*) to include the negligent acts of its doctors performed in the course of professional treatment.

It was the view of FOSTER, J., writing a dissent in the *Liubowsky* case (*supra*, p. 420), that section 12-a " means only that the State waives its sovereign immunity for liability for the torts of its employees, and consents to have its liability determined in accordance with the same rules of law that apply to an action against an individual or corporation. The rules meant are obviously not rules of practice, but substantive rules of law which go to the question of liability. *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163) holds nothing to the contrary.

" It is still the law that a public hospital corporation is not liable to a patient for the torts of physicians and nurses if the hospital has used proper care in the selection of such physicians and nurses. (*Schloendorff* v. *New York Hospital,* 211 N. Y. 125; *Mills* v. *Society of New York Hospital,* 242 App. Div. 245, affd. 270 N. Y. 594; *Phillips* v. *Buffalo General Hospital,* 239 id. 188.) The test in this case, therefore, is whether liability would exist if the hospital in question was an ordinary public hospital instead

of a State institution. I think the answer must be in the negative in so far as the acts of doctors and nurses are concerned.''

It is of interest to note that when the Legislature set out to impose a new liability of this character, it spoke in no uncertain terms. Thus, section 50-d of the General Municipal Law, (enacted in 1937) reads: '' Every municipal corporation, notwithstanding any inconsistent provision of law, general, special or local, shall be liable for, and shall assume the liability, to the extent that it shall save him harmless, of any physician or dentist rendering medical services or dental services of any kind gratuitously to a person in a public institution maintained in whole or in part by the municipal corporation, for damages for personal injuries alleged to have been sustained by such person by reason of the malpractice of such physician or dentist while engaged in the rendition of such services. *Every such physician or dentist, for the purpose of this section, shall be deemed an employee of the municipal corporation,* so maintaining such institution, notwithstanding that the municipal corporation derived no special benefit in its corporate capacity. * * * '' (Emphasis supplied.) See, also, *Derlicka* v. *Leo* (284 N. Y. 711; reargument denied, 285 N. Y. 522).

It is a familiar rule of construction that a statute, changing the common law by imposing a liability not theretofore existing, must be strictly construed and may not be extended by construction. (*Smith* v. *State of New York,* 227 N. Y. 405; *Kelly* v. *City of Niagara Falls,* 131 Misc. 934; *Minshell* v. *State of New York,* 123 Misc. 177; McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 301, and cases cited.)

Nonetheless, in the *Robison* case (263 App. Div. 240, *supra*) the Appellate Division, Fourth Department, in passing on the sufficiency of a proposed claim, stated, per HARRIS, J. (p. 243): '' The questions involved here are briefly stated: * * * (2) * * * is there liability on the part of the State for such alleged negligence and/or malpractice at the State school hospital. * * *

'' Section 8 of the Court of Claims Act is quoted as follows: ' The State hereby waives its immunity from liability and action and hereby assumes liability and action [sic] and consents to have the same determined in accordance with the same rules of law as applied to actions in the Supreme Court against individuals or corporations, provided the claimant complies with the limitations of this article. Nothing herein contained shall be

construed to affect, alter or repeal any provision of the Workmen's Compensation Law.'

'' By the adoption of such section the State places itself, as to those making claims against the State, in the same position as a private individual or a corporation would be for his or its negligence. (Court of Claims Act, Section 8; *Liubowsky* v. *State of New York,* 260 App. Div. 416; affd. 285 N. Y. 701; *Turack* v. *State of New York,* 259 App. Div. 1105; affd. 285 N. Y. 737.) The State is bound not only by the duty of not neglecting its administration functions to provide proper facilities and competent employees (physicians and nurses) (See *Schloendorff* v. *New York Hospital,* 211 N. Y. 125), but further has made itself responsible for the negligence of such employees, apparently even though the employees are physicians and nurses. (See *Liubowsky* v. *State of New York, supra; Turack* v. *State of New York, supra; Torrey* v. *State of New York,* 175 Misc. 259, 262.) The question as to whether the State would be liable in negligence to the claimant if she had suffered from negligence from which she claims she suffered at the State school hospital, must be answered in the affirmative    *    *    *.''

Two of the justices dissented upon the ground that the doctrine of *respondeat superior* did not apply, urging (p. 245) that '' the services of the doctors, who made a bad diagnosis of claimant's injury, were performed in a professional, rather than an administrative capacity, and the hospital was not a private one, serving for profit. The case falls within the class of cases mentioned in the opinion in *Dillon* v. *Rockaway Beach Hospital* (284 N. Y. 176, 180) and also in the opinion in *Volk* v. *City of New York* (Id. 279, 284).''

The *Robison* case (*supra*) was thereafter tried before Judge RYAN of this court and judgment was rendered against the State for the malpractice of the State physicians (Claim No. 27106). The Appellate Division, Fourth Department (266 App. Div. 1054) and the Court of Appeals (292 N. Y. 631) both unanimously affirmed the judgment, without opinion.

The holdings in the *Liubowsky* and *Robison* cases (*supra*) are therefore here regarded as fastening a liability upon the State for the malpractice of its physicians. In such cases then, the doctrine of *respondeat superior* is to apply and the State may not dispute liability upon the theory that the doctor is an independent contractor. This court perforce must follow these decisions and award judgment for the claimant.