CARL F. SCHRECK, as Administrator of the Estate of JOHN G. SCHRECK, Deceased, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 38345.) (Action No. 1.)

RICHARD W. LA ROSE et al., Individually and as Administrators of the Estate of RICHARD N. LA ROSE, Deceased, Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 38456.) (Action No. 2.)

JEAN SALVAGGIO, as Administratrix of the Estate of ROBERT S. JACOBS, Deceased, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 38506.) (Action No. 3.)

LOUIS RAMSEY, as Administrator of the Estate of HARRY RAMSEY, Deceased, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 38549.) (Action No. 4.)

ALLEN J. NEACH, as Limited Administrator of the Estate of ROBERT NEACH, Deceased, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 38681.) (Action No. 5.)

Court of Claims, August 17, 1962.

*Edward Schmitt* and *John T. Collins* for claimants in Actions Nos. 1, 3 and 4. *O'Connell & McEwen* (*William B. O'Connell* and *Thomas E. Dupre* of counsel), for claimants in Action No. 2. *Andrew A. Santora* and *John T. Collins* for claimant in Action No. 5. *Louis J. Lefkowitz, Attorney-General* (*Paul F. Diggins, Jr.*, of counsel), for defendant.

J. SEWARD BODINE, J. These five claims which were tried together, commencing on January 22, 1962, at Rochester, New York, and concluded, after interruption, at Waterloo, New York, on February 8, 1962, are for the deaths of five teenage boys who were inmates at the Craig Colony for epileptics at Sonyea, New York, all of whom were found dead in a heating tunnel on the grounds of the State institution, September 9, 1960. They had presumably died on September 7, when they were thought to have entered the tunnel, and, in fact, they were found to have been missing from their group about 3 o'clock in the afternoon on September 7, which happened to be one of the hottest days of the year. When the boys were found to be missing, a search was immediately started, and it was generally assumed that they had escaped from the grounds either to go for a swim, to escape from the heat, or to go on a lark of some kind. None of the employees or officers involved had any idea that the bodies were in a heating tunnel until the odor of the decomposition of their bodies made it obvious.

The boys were presumably dead before 3:00 P.M. on September 7, as there was general testimony to the effect that nobody could live in the temperature which was somewhere around 137 degrees for more than an hour and a half, and they were thought to have entered the tunnel immediately after lunch, or around 1:00 P.M.

It is obvious that the cause of death was heat prostration. The youths might have had some apprehension of death, but generally there is little pain and suffering connected with such a death. It is the duty of the institution to afford its patients

every reasonable care to protect them from injury either self-inflicted or otherwise (*Scolavino* v. *State of New York,* 187 Misc. 253, mod. on other grounds 271 App. Div. 618, affd. 297 N. Y. 460; *Martindale* v. *State of New York,* 244 App. Div. 877, affd. 269 N. Y. 554; *Shattuck* v. *State of New York,* 166 Misc. 271, affd. 254 App. Div. 926) so that if the State were negligent in the supervision and care of these boys or negligent in guarding the entrances to the tunnels, the claimants are entitled to recover for whatever pain and suffering the boys experienced, as well as for the actual pecuniary loss resulting to the families upon the death of any of these boys.

There is direct evidence of negligence in the testimony of one of the State Engineers who had worked in the tunnel a day or two before this accident, and who testified that he closed the door leading to the main tunnel in the cellar of the Cayuga building, but did not lock it, on the day before. He testified that he did not lock it, although the door was provided with a lock and he had the key to perform that operation. There is no question but that the cellar into which this heating tunnel leads was locked, as it had to be unlocked before the searchers could get in. Apparently the boys had entered the cellar of an adjacent building in which a window had been removed and which was provided with a heavy grating by slipping through over the top of the grating, or by actually moving the grating a few inches. They then entered a heating tunnel which was not provided with a lock, which led to the Cayuga building only a short distance away, and from there entered the main tunnel.

The school authorities, in the exercise of reasonable care, should have discovered that this window had been opened and that the entire sash was out and was lying on the cellar floor, with all the panes of glass broken. But they failed to do so. This, coupled with the testimony above referred to, leads the court to find that the State was guilty of negligence in the wrongful death of all five of these boys.

The court now comes to the question of damages for wrongful death and, on the record before us, we must find that in the case of three of these boys, to wit, Ramsey, Schreck and Jacobs, because of their afflictions, from which there was little or no possibility of recovery, there was no possibility that they would ever assume a place in normal society, but would be inmates of an institution for the rest of their lives. Thus, while their families have suffered severe personal loss because of this unfortunate accident which resulted in these claims, we cannot, under the proof herein, find that they have suffered a pecuniary

loss within the meaning of the pertinent statute. (Decedent Estate Law, § 132; *Grasso* v. *State of New York*, 289 N. Y. 552; *Stevens* v. *State of New York*, 196 Misc. 712; *Johnsen* v. *State of New York*, 176 Misc. 347.)

In the case of these three boys, the only pecuniary loss suffered by the next of kin was their funeral expenses, and in the Ramsey claim no proof of such expenses was offered, and, in fact, the body was buried by the State.

Neach was a little better and there was some possibility that he would assume a place, though perhaps a humble one, in normal society, and upon the record, we find, as a result of his death, his family suffered some pecuniary loss. (*Liubowsky* v. *State of New York*, 260 App. Div. 416, affd. 285 N. Y. 701.)

La Rose, however, was of normal intelligence, and when on parole from the institution, he had been of considerable assistance to his father. This victim had a good chance of assuming a place in normal society, and as a result of his death, his next of kin sustained considerable pecuniary loss.

At the time of his death, Robert J. Neach was about 13 years of age, and left surviving his father and mother and 11 brothers and sisters.

At the time of his death, Richard N. La Rose was 13 years of age, and left surviving his father and his mother, who were in their early thirties, and one sister.

Carl F. Schreck was appointed administrator of the estate of John G. Schreck, deceased, on September 28, 1960, by the Surrogate of Erie County. His claim herein was duly filed on October 4, 1960.

Richard W. La Rose and Eleanor J. La Rose were appointed administrators of the estate of Richard N. La Rose, deceased, on October 17, 1960, by the Surrogate of St. Lawrence County. Their claim was duly filed on November 1, 1960.

Jean Salvaggio was appointed administratrix of the estate of Robert S. Jacobs, deceased, on October 19, 1960, by the Surrogate of Niagara County. Her claim was duly filed on November 15, 1960.

Louis Ramsey was appointed administrator of the estate of Harry Ramsey, deceased, on October 18, 1960, by the Surrogate of Saratoga County. His claim was duly filed on November 22, 1960.

Allen J. Neach was appointed limited administrator of the estate of Robert Neach, deceased, on October 13, 1960, by the Surrogate of Schenectady County. His claim was duly filed on December 23, 1960.

The several claims have not been assigned.

The court finds the following damages in each claim, and each claimant is entitled to an award against the State of New York in the amounts indicated below:

1. For Carl F. Schreck, as administrator of the estate of John G. Schreck, deceased, the sum of $656.60 for burial expenses with interest thereon from September 7, 1960, to the date of entry of judgment herein, and the sum of $500 for pain and suffering.

2. For Richard W. La Rose and Eleanor J. La Rose, as administrators of the estate of Richard N. La Rose, deceased, the sum of $10,975, which includes burial expenses, with interest thereon from September 7, 1960, to the date of entry of judgment, and the sum of $500 for pain and suffering.

3. For Jean Salvaggio, as administratrix of the estate of Robert S. Jacobs, deceased, the sum of $1,015 for burial expenses with interest thereon from September 7, 1960, to the date of entry of judgment, and the sum of $500 for pain and suffering.

4. For Louis Ramsey, as administrator of the estate of Harry Ramsey, deceased, the sum of $500 for pain and suffering.

5. For Allen J. Neach, as limited administrator of the estate of Robert Neach, deceased, the sum of $3,250, which includes burial expenses, with interest thereon from September 7, 1960, to the date of entry of judgment, and the sum of $500 for pain and suffering.