JOHN BRYANT, Appellant, *v.* PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK, Respondent.

Argued October 16, 1952; decided January 15, 1953.

*Irwin Isaacs* for appellant. Plaintiff established a prima facie case, requiring defendant to go forward with the evidence, and the trial court erred in dismissing the complaint at the end of plaintiff's case. (*White* v. *Prospect Heights Hosp.*, 278 App. Div. 789; *Howe* v. *Medical Arts Center Hosp.*, 261 App. Div. 1088, 287 N. Y. 698; *Roewekamp* v. *New York Post-Graduate Medical School & Hosp.*, 256 App. Div. 957, 283 N. Y. 585; *Hendrickson* v. *Hodkin*, 276 N. Y. 252; *Volk* v. *City of New York*, 284 N. Y. 279; *Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Layer* v. *City of Buffalo*, 274 N. Y. 135; *Kraus* v. *Birnbaum*, 200 N. Y. 130; *Osipoff* v. *City of New York*, 286 N. Y. 422.)

*Olin S. Nye* and *Matthew E. Lawless* for respondent. I. There is no evidence of negligence. (*Schloendorff* v. *Society of New York Hosp.*, 211 N. Y. 125; *Bakal* v. *University Heights Sanitarium*, 277 App. Div. 572, 302 N. Y. 870; *Roewekamp* v. *New York Post-Graduate Medical School & Hosp.*, 256 App. Div. 957, 283 N. Y. 585.) II. The medical evidence is insufficient to support a verdict.

LEWIS, J. The plaintiff, by this action, seeks recovery for personal injuries allegedly suffered by him while a patient in the defendant hospital, which injuries he claims resulted from the negligent administration of a single hypodermic medication by an undergraduate nurse.

The case is here on appeal by permission of the Appellate Division where a judgment of Trial Term was unanimously affirmed which dismissed the complaint at the close of plaintiff's evidence.

From the record before us it appears that following plaintiff's admission to the defendant hospital on July 31, 1949 — at which time he complained of pains in his side and back — the diagnosis of his physical disorder, based upon various tests and analyses, was a dormant *thromboangiitis obliterans* (Buerger's disease). Then followed a series of treatments in the course of which hypodermic injections of penicillin were administered by nurses " dressed all in white." As a result of those treat-

ments there came a time when plaintiff's pain had subsided to such an extent that his physician informed him he would be discharged from the hospital on the following day — August 17, 1949. On the morning of that day plaintiff was seated on a porch adjoining the ward where he had been assigned, when he was approached by a person whom he described as a nurse who wore " black shoes and black stockings and I think it was a light — light blue kind of a striped uniform." Her uniform differed from that worn by those who had attended him and, although he thought he had seen her before, she had not previously given him medicinal treatments of any kind. After a brief conversation with her the plaintiff accompanied the nurse back to the ward where she administered a hypodermic injection in the lower part of the right buttock. Later, when plaintiff felt severe pain in the area of his hip, the nurse in charge of his ward administered a medication which brought relief. Thereafter, according to plaintiff's testimony, he suffered intense pain and grievous permanent physical injuries caused by the single hypodermic injection administered to him on August 17, 1949, his claim being that the injection — which allegedly injured the right sciatic nerve — was wrongly placed, negligently done, and was administered by an incompetent undergraduate nurse whose inexperience in that type of medication was known to staff members of the defendant hospital.

Giving the plaintiff the benefit of every favorable inference reasonably to be drawn from the evidence (*Faber* v. *City of New York,* 213 N. Y. 411, 414; *Hanlon* v. *Macfadden Publications,* 302 N. Y. 502, 506) we find in the record a complete lack of certain items of proof essential to his recovery herein. In reaching that conclusion we have examined plaintiff's pleadings and the record of evidence to ascertain whether proof was made of facts which underlie his claim, and upon the establishment of which he has the burden.

By his amended complaint the plaintiff alleges that the personal injuries for which he seeks recovery resulted from a hypodermic injection of medication — which a bill of particulars asserts was penicillin — administered to him on or about September 7, 1949. However, upon the trial the plaintiff was permitted to amend his complaint and bill of particulars to allege that the hypodermic injection in suit was given on August 17, 1949. The amended complaint also alleges that the injection

was administered to the plaintiff by "M. D. Smith", a first-year student in defendant's nursing school. We find in the record no proof whatever in support of that allegation. Although the hospital records show that, at the time plaintiff was a patient, M. D. Smith was an undergraduate nurse in the defendant's school of nursing, the only record which mentions a person by that name in any relation to the plaintiff is a pharmacy receipt signed by "M. D. Smith" on *September 3, 1949*, for "*Codeine Phosphate Solution* * * * Patient's Name * * * Bryant".

Thus, although there is no suggestion that any hospital record was withheld from plaintiff for use upon the trial, there is no evidence of the fact pleaded by the plaintiff that on August 17, 1949, M. D. Smith, an undergraduate nurse, administered to him the hypodermic injection of which he complains. Nor did he, by his own testimony or by other proof, identify the person who administered that medication, except to describe her as having worn black shoes and black stockings and a light blue striped uniform which differed from that worn by other nurses who had attended him. That meager description by the plaintiff of the nurse who was in attendance upon him did not, without more, prove that the nurse who administered the hypodermic injection on August 17, 1949, was an undergraduate nurse with only a brief period of training; nor did it prove that she lacked experience in the administration of medications hypodermically, or that her proficiency in that form of medical treatment had not been the subject of careful investigation and selection by the defendant's staff officers. Nor was there proof as to how much training is necessary to administer medications hypodermically. Upon that phase of the case there was evidence, introduced as part of plaintiff's case, that undergraduate nurses in attendance at the three-year training course conducted at the defendant hospital were permitted to give hypodermic injections during their first year of training. There was no testimony, however, that such a procedure was not in accord with practice approved by informed medical authorities, or was not in accord with similar practice prevailing in other teaching hospitals.

It is manifest that medication given to a patient by hypodermic injection is a medical act, not administrative routine. In this jurisdiction the liability of a hospital for negligence in the performance of such an act is predicated upon a lack of

care by the hospital in selecting and furnishing the doctor or nurse by whom the act is performed. The care in such selection cannot be less than " * * * appropriate investigation of the character and capacity of the agencies of service from the highest to the lowest." (*Hamburger* v. *Cornell Univ.*, 240 N. Y. 328, 338, 339.) To paraphrase — for purposes of this case — language written for this court in the case last cited above (p. 339), " The plaintiff does not advance [his] case materially by fastening upon the defendant a duty of diligent selection. The burden is still [his] to prove that the duty was disregarded." The decisive factors in the record at hand are its lack of proof by the plaintiff not only of the identity of the nurse who on August 17, 1949, administered the hypodermic injection of which plaintiff complains but also the consequent lack of proof that care by the defendant hospital was disregarded in the selection of whoever was the administering nurse. (See *Schloendorff* v. *Society of New York Hosp.*, 211 N. Y. 125, 129, 132; *Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188, 189, 191; *Sutherland* v. *New York Polyclinic Medical School & Hosp.*, 273 App. Div. 29, 30–32, affd. 298 N. Y. 682; *Bakal* v. *University Heights Sanitarium*, 277 App. Div. 572, 575–576, affd. 302 N. Y. 870.)

The decision in *Howe* v. *Medical Arts Center Hosp.* (261 App. Div. 1088, affd. 287 N. Y. 698) does not reinforce the position of the plaintiff in the case at bar. Rather does it, in our view, serve to point up a vital lack in the record now before us. In the *Howe* case (*supra*) substantial evidence came into the record as part of plaintiff's proof — and became the chief issue at the trial and the point chiefly argued on appeal — that when the woman whose alleged negligence caused plaintiff's injuries joined the nursing staff of the defendant hospital, appropriate investigation was not made and care was not exercised by responsible staff officers of the hospital to ascertain her qualifications for professional nursing. Evidence of that character — which became a decisive factor in the *Howe* case — is, as we have seen, completely lacking in the record we now review.

The judgment should be affirmed, without costs.

FROESSEL, J. (dissenting). In this negligence action, plaintiff's complaint was dismissed at the close of his case. He adduced evidence that he became a patient in defendant's hospital on July 31, 1949. After more than two weeks of treatment by physicians and nurses " dressed all in white ", and on August

16th, he was told by one of the attending physicians that he could " go home tomorrow." His brother thereupon paid the hospital bill and sent him his clothes.

The following day, on August 17th, while dressed and waiting on the hospital porch for his discharge, he was approached by a person described by him as a nurse who was wearing a " light blue kind of a striped uniform ", black shoes and black stockings — not the white uniform worn by other nurses who had previously treated him. She directed him to return to his bed, where she gave him an injection in the lower part of the buttock. *Hospital records* indicate that such injection was given for the purpose of introducing penicillin, but the *nurse's notes* failed to show any such injection on that day.

There was also evidence that this defendant permitted student nurses to give injections to patients. Competent medical testimony was produced to show that the injection in question was negligently performed, in that the needle was inserted into an improper part of plaintiff's anatomy, causing damage to the sciatic nerve. A notation upon the continuation sheet at defendant's clinic indicates a conclusion by three examining physicians that plaintiff was suffering from " underlying thromboangiitis obliterans of both legs " and that " the injection he received at Presbyterian may have done something to accelerate or precipitate the process in the right leg ". Plaintiff's left leg was subsequently amputated at another hospital in August of the following year.

From the foregoing evidence, the jury could have found that the injection was not administered by a regularly registered or trained nurse, but by a student in defendant's nursing school. It is now the holding of the majority of this court that such a finding is insufficient in law to establish a prima facie cause of action as against defendant hospital. With this holding I am constrained to disagree.

The traditional immunity of the hospital from liability for the acts of physicians and nurses, in their capacity as such, is based upon the view that the hospital's duty to the patient is limited to the furnishing of competent personnel to perform medical duties. It is only for negligence in the selection of such personnel that the hospital may be held liable (*Bakal* v. *University Heights Sanitarium*, 277 App. Div. 572, affd. 302 N. Y. 870; *Hamburger* v. *Cornell Univ.*, 240 N. Y. 328; *Schloendorff* v. *Society of New York Hosp.*, 211 N. Y. 125).

Trained nurses, like licensed physicians, "are regarded as especially equipped to render professional services to patients when called on to do so" (*Matter of Renouf* v. *New York Central R. R. Co.*, 254 N. Y. 349, 351). If, then, the injection had been administered by a regularly qualified nurse it would have been incumbent upon plaintiff to show that there was reason to doubt her competency when she was employed. To apply that same principle to one concededly not yet qualified by experience or training for the nurse's cap, and may never be, however, seems to me to be an unwarranted extension of the immunity rule, which has not escaped criticism in recent years.

When a hospital chooses to furnish other than duly qualified nurses for the performance of *strictly medical* duties, it should, in fairness, be required at least to accept the burden of justifying such selection when harm results. It may be that here defendant could show that the student who actually administered the injection (a note of which was made in its hospital records but not in its nurse's notes, as above noted), had been properly instructed in anatomy and related subjects in defendant's nursing school, and that she had demonstrated adequate knowledge and sufficient ability as a nurse to be entrusted with such tasks. In the absence of at least such a showing by defendant the complaint should not have been dismissed, for the mere fact that she was an undergraduate is insufficient to presume her competence (see *Howe* v. *Medical Arts Center Hosp.*, 261 App. Div. 1088, affd. 287 N. Y. 698). In that case a student nurse negligently burned a patient with hot water bags; although she was an undergraduate, she was actually graduated from a nonaccredited nursing school and had also had several years' experience at recognized hospitals. "From the fact that the nurse was an undergraduate," among other things, the Appellate Division pointed out, "the jury was entitled to conclude that the defendant had failed in its duty" to provide competent nurses.

The conclusion here reached is not repugnant to our holding in *Phillips* v. *Buffalo Gen. Hosp.* (239 N. Y. 188), where it was said that it is the character of the act (i.e., application of hot water bottles), rather than the title of the actor, that determines the extent of the hospital's duty. Insofar as that case retains its authority (cf. *Howe* v. *Medical Arts Center Hosp.*, *supra*), it is distinguishable from the case at bar in that we

were there concerned with a type of ministration which might reasonably be performed either by a nurse or by an orderly. As to such functions, we explicitly noted that "The line of demarcation is not clearly drawn" (p. 190). It takes no extensive professional training to equip one properly to apply a hot water bottle. But, where the act is strictly medical, as the giving of medication by the insertion of a needle into the human body, no casual, perfunctory or limited training can be considered adequate. Prima facie, only the regularly qualified nurse possesses the professional capacity, judgment and experience to perform such duties, and the mere authorization by defendant to its student nurses, however brief their training, to do so does not constitute proof that such authorization was proper.

For the foregoing reasons, the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE and FULD, JJ., concur with LEWIS, J.; FROESSEL, J., dissents in opinion.

Judgment affirmed.