VERA MRACHEK, Respondent, *v.* SUNSHINE BISCUIT, INC., Appellant, et al., Defendants.

Argued October 15, 1954; decided December 31, 1954.

*Joseph J. Brophy* and *Desmond T. Barry* for appellant. The corporate defendant is not derivatively responsible for the medical neglect, if any, of a physician whom it employed to test job applicants. (*Bakal* v. *University Heights Sanitarium* 277 App. Div. 572, 302 N. Y. 870; *Schloendorff* v. *Society of N.*

Y. Hosp., 211 N. Y. 125; Rabasco v. New Rochelle Hosp. Assn., 266 App. Div. 971; Dillon v. Rockaway Beach Hosp., 284 N. Y. 176; Sutherland v. New York Polyclinic Med. School & Hosp., 298 N. Y. 682; Matter of Renouf v. New York Central R. R. Co., 254 N. Y. 349; Schneider v. New York Tel. Co., 249 App. Div. 400, 276 N. Y. 655; Laubheim v. De Koninglyke N. S. M., 107 N. Y. 228; Brown v. La Societe Francaise, 138 Cal. 475; Smith v. Mallinckrodt Chemical Works, 211 Mo. App. 158; Philips v. St. Louis R. Co., 211 Mo. 419.)

Jacquin Frank and David M. Fink for respondent. Here there was no doctor-patient relationship. Defendant's employee was not required or authorized to exercise any judgment whatsoever as to the necessity of extracting blood; the negligent acts committed here were for the benefit of defendant's business and defendant is legally responsible for these acts. (Carpenter v. Blake, 75 N. Y. 12; Pike v. Honsinger, 155 N. Y. 201; Schloendorff v. Society of N. Y. Hosp., 211 N. Y. 125; Phillips v. Buffalo Gen. Hosp., 239 N. Y. 188; Dillon v. Rockaway Beach Hosp., 284 N. Y. 176; Bakal v. University Heights Sanitarium, 277 App. Div. 572, 302 N. Y. 870; Matter of Renouf v. New York Central R. R. Co., 254 N. Y. 349; Schneider v. New York Tel. Co., 249 App. Div. 400, 276 N. Y. 655; Ranelli v. Society of N. Y. Hosp., 269 App. Div. 906, 295 N. Y. 850; Pivar v. Manhattan Gen., 279 App. Div. 522; Darcy v. Presbyterian Hosp. in City of N. Y., 202 N. Y. 259; Johnsen v. Staten Is. Hosp., 246 App. Div. 638, 271 N. Y. 519; Engels v. City of New York, 256 App. Div. 992, 281 N. Y. 650; Greenfield v. Hospital Assn. of City of Schenectady, 258 App. Div. 352; Nathanson v. City of New York, 282 N. Y. 556; Laubheim v. De Koninglyke N. S. M., 107 N. Y. 228.)

FROESSEL, J. On June 12, 1951, plaintiff applied for employment with defendant, Sunshine Biscuit, Inc. It was the latter's practice to require each job applicant to submit to a physical examination and, in addition, to a blood test in order to determine whether or not he or she was suffering from a communicable disease. On the fifth floor of its plant, defendant maintained rooms for first aid and a " pre-employment or pre-placement room for examinations ". Defendant equipped these rooms and regularly employed a physician and two nurses.

According to plaintiff, who testified through an interpreter, she was sent to these rooms, after filling out an application form. She was weighed, measured, given an eye check, and a physical examination. Following the examination, she was also given a "blood test" which was ordered by defendant. We are presently concerned only with that test, and not with other situations, e.g., where one had voluntarily applied for first aid or other treatment (*Schneider* v. *New York Tel. Co.*, 249 App. Div. 400, affd. 276 N. Y. 655).

In attempting to obtain blood from the left arm, the physician twice inserted the needle, probing beneath the skin many times, but he failed to draw any blood into the syringe. Then he took plaintiff's right arm and drew blood on the first attempt. His probing into plaintiff's left arm caused her to lose all feeling in her left hand, which soon developed an extremely painful, claw-like paralysis, diagnosed as "causalgia". Not long after the injury, plaintiff was discharged from employment, because she was unable to use her left hand in her work; twice thereafter she was re-employed and discharged, finally on October 15, 1951.

In this action by plaintiff against Sunshine Biscuit, Inc.— the case against the physician was discontinued by consent — the Trial Judge determined that the physician had been negligent, that his employer, Sunshine, was responsible for his negligence, and that plaintiff was entitled to $30,000 damages. The majority of the Appellate Division affirmed except as to damages, which they reduced to $15,000. Two Justices, however, voted to reverse and dismiss the complaint "on the ground that the defendant company was not liable for the acts of the physician in administering the blood test".

Questions of negligence, causation and damages are not raised on this appeal by defendant. Clearly, they were questions of fact, and, there being substantial evidence to support the findings below, we cannot disturb them. The only issue before us, therefore, is whether the defendant, a private industrial corporation, is derivatively liable for the negligence of a physician whom it employed to test job applicants.

Defendant relies on the rule, firmly established in this State, exempting hospitals from liability for the negligence of their physicians and nurses *in the treatment of patients*. This rule has been applied in favor not only of charitable and private

hospitals (*Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125, 132–133; *Bakal* v. *University Heights Sanitarium*, 277 App. Div. 572, affd. 302 N. Y. 870), but also of private corporations which engage physicians for *treatment* of employees or third persons (*Laubheim* v. *De Koninglyke N. S. M.*, 107 N. Y. 228; *Schneider* v. *New York Tel. Co., supra; Allan* v. *State S.S. Co.*, 132 N. Y. 91).

Formerly, our courts invoked the theory of implied waiver to exempt *charitable* hospitals from liability for their physicians' malpractice (see *Schloendorff* v. *Society of N. Y. Hosp., supra,* pp. 128–129); but this doctrine has since been repudiated (*Sheehan* v. *North Country Community Hosp.*, 273 N. Y. 163; *Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188). Today, if a hospital, or even a private corporation, is to be granted immunity from liability for the torts of one of its physicians, such immunity must rest upon the physician's status as an '' independent contractor '' as opposed to '' servant ''.

It will serve no useful purpose to analyze in detail the many precedents of our court dealing with this subject of hospital immunity. The cases which have thus far come before us have involved negligence occurring *in the course of treatment and care* of a patient who was at the hospital seeking relief or a cure for some malady with which he was afflicted. In each such instance, a doctor-patient relationship existed, and the *doctor determined what was to be done.* In these cases, where the tort was committed in the course of treatment, immunity, when granted to hospitals, was based upon the following rationale: '' Such a hospital undertakes, not to *heal or attempt to heal* through the agency of others, but merely to supply others who will *heal or attempt to heal* on their own responsibility.'' (Emphasis supplied; *Matter of Bernstein* v. *Beth Israel Hosp.*, 236 N. Y. 268, 270, quoted with approval in *Phillips* v. *Buffalo Gen. Hosp., supra,* p. 189.) At the heart of this rationale lies the thought that the hospital does not cure the patient; rather it procures a physician who, in rendering *treatment,* exercises his own judgment and discretion, undirected and uncontrolled by the hospital.

Where the physician's negligence has occurred in the course of treatment which he determined to give, we have, as already noted, applied the rule that if at the time of the tort he was engaged in a '' professional '' (sometimes called '' medical '')

act, he was acting as an independent contractor, and the hospital would not be liable. If, on the other hand, his negligence was " administrative ", then the hospital will be held responsible, for he was acting as its servant (*Dillon* v. *Rockaway Beach Hosp.*, 284 N. Y. 176; *Ranelli* v. *Society of N. Y. Hosp.*, 269 App. Div. 906, affd. 295 N. Y. 850; *Iacono* v. *New York Polyclinic Med. School & Hosp.*, 268 App. Div. 955, affd. 296 N. Y. 502; *Sutherland* v. *New York Polyclinic Med. School & Hosp.*, 273 App. Div. 29, affd. 298 N. Y. 682, motion for reargument denied 298 N. Y. 794; *Grace* v. *Manhattan Eye, Ear & Throat Hosp.*, 276 App. Div. 955, affd. 301 N. Y. 660; *Bakal* v. *University Heights Sanitarium, supra*; *Holtfoth* v. *Rochester Gen. Hosp.*, 304 N. Y. 27).

Thus, even where *in the course of treatment* a patient is injured through a negligent " administrative " act, such as failing to erect sideboards after deciding they are necessary (*Ranelli* v. *Society of N. Y. Hosp., supra*), or giving a blood transfusion to the wrong patient (*Necolayff* v. *Genesee Hosp.*, 270 App. Div. 648, affd. 296 N. Y. 936), the hospital is liable. In such cases, it is not the person (i.e., the physician, nurse or orderly), but the nature of the negligent act, which determines the hospital's liability (*Dillon* v. *Rockaway Beach Hosp., supra*).

The instant case, however, presents an entirely different situation from those in the cases above cited. There, the physician's negligence occurred in the course of treatment of a patient, the nature of which he determined. Here, plaintiff merely sought employment. In accordance with defendant's policy, she was sent to its pre-employment room for a blood extraction by its own physician, who, in obedience to its order, manipulated the needle with the consequences afore-mentioned. She was not his patient, for, as she testified, " They told me I had to get the company doctor ". She asked for no treatment, nor was she undergoing treatment or care at his hands; she went to him as a prospective employee of defendant and under its express direction. Her health had previously been good. Thus the rationale supporting the previously discussed " treatment " cases cannot apply to the present situation.

Moreover, the physician was a regular employee of defendant. He worked on defendant's premises daily in an office entirely equipped by defendant. He was on a straight salary and was

paid semimonthly like other office employees of defendant. The usual payroll deductions (including Federal income tax and social security) were taken from his paycheck, and he was covered under the Workmen's Compensation Law.

He did not exercise any discretion or judgment in determining whether or not to draw an applicant's blood. According to defendant's manager, its physician was " required " by the employer to make a " blood test ". He himself testified he did as many as twenty or twenty-four of these tests a day. Furthermore, " blood test " here is a misnomer, for all that the physician does is merely to extract a small quantity of blood and forward it to a testing laboratory, which conducts the actual test and reports back either a positive or negative finding.

Thus the only act performed by the physician in this respect was the insertion of the needle to draw the blood. He did this not as an independent contractor exercising his own discretion, but by command of his employer, the defendant. To call this a " medical act " and therefore within the immunity rule of the " treatment " cases would be to apply those cases out of the independent contractor context from which they arose. We look to the " medical "-" administrative " distinction only when the negligence occurred during *treatment or care* of a patient, and where the physician acts *independently*. Here, where there was no treatment or care involved, where there was no doctor-patient relationship, where the physician did not act independently but merely " obeyed an order given by his employer ", and where the physician's act " was done solely for the purpose of furnishing to the employer in its business a report of the physical condition of the applicant ", the physician was a servant, not an independent contractor, and the employer is liable for his negligence.

The judgment should be affirmed, with costs.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FULD and VAN VOORHIS, JJ., concur.

Judgment affirmed.