No. 22143.

LISA MARIE BERNARDI, A MINOR BY HER FATHER AND NEXT FRIEND, FRANK D. BERNARDI, AND FRANK D. BERNARDI *v.* COMMUNITY HOSPITAL ASSOCIATION, A COLORADO CORPORATION, DOROTHY DRAVIS AND CHARLES L. AUMILLER.

(443 P.2d 708)

Decided July 15, 1968.      Rehearing denied August 6, 1968.

Richard C. Hopkins, for plaintiffs in error.

T. Raber Taylor, for defendant in error Community Hospital Association.

Williams, Taussig and Trine, for defendant in error Dorothy Dravis.

Zarlengo, Mott and Carlin, for defendant in error Charles L. Aumiller.

*En Banc.*

Mr. Justice Groves delivered the opinion of the Court.

This action was brought by the plaintiffs in error, Lisa Marie Bernardi and her father, against Community Hospital Association, a Colorado corporation, Dorothy Dravis and Charles L. Aumiller. Plaintiffs in error are herein referred to as plaintiffs, and Lisa Marie Bernardi as Lisa. Reference is made to the defendants in error as follows: Community Hospital Association as the Hospital; Dorothy Dravis as the Nurse; and Charles L. Aumiller as the Doctor.

Lisa, seven years of age, was a patient in the Hospital, having been the subject of surgery for the drainage of an abscessed appendix. The Doctor was her attending physician. He had left a written post-operative order at the Hospital that Lisa was to be given an injection of tetracycline every twelve hours. During the evening of the first day following surgery, the Nurse, employed by the Hospital and acting under this order, injected the dosage of tetracycline in Lisa's right gluteal region. It was alleged in the complaint that the Nurse negligently injected the tetracycline into or adjacent to the sciatic nerve, causing Lisa to have a "complete foot-drop" and to lose permanently the normal use of her right foot. For the purpose of this opinion the alleged negligence and resulting injury are assumed, although undoubtedly these will be issues at the trial.

The trial court granted the Doctor's motion that the complaint be dismissed for failure to state a claim upon which relief could be granted against him and granted a motion for summary judgment in favor of the Hospital.

Prior to the granting of the motion for summary judgment, the trial court made findings of fact based upon the plaintiffs' responses to the Hospital's requests for admissions. These findings include the following: That the Hospital is a nonprofit, charitable corporation; that the Hospital is controlled by a standard of the Colorado State Board of Health to the effect that no medications shall be given except on the written order (or verbal order confirmed in writing) of a qualified, Colorado-licensed physician; that the Doctor was licensed to practice medicine by the Colorado State Board of Medical Examiners and was engaged in the private practice of medicine; that the Nurse was licensed in Colorado to practice professional nursing, *i.e.*, was an R.N., and, under the 1957 Professional Nursing Practices Act (C.R.S. 1963, Chapter 97, Article 1) and rules adopted thereunder by the Colorado State Board of Nursing, she could administer a doctor-prescribed injection involving

the piercing of tissue under and only under the direction of a licensed physician; that Lisa's father, in advance of the surgery, gave written authorization for operative procedure by signing a form which provided in part: "I certify that the above procedure has been explained to me and I understand the diagnostic or treatment necessary for the operation(s). The Community Hospital, its medical staff, and the employees are hereby released from liability of the results of the procedure."

The Hospital's motion for summary judgment was predicated on the following propositions: That the scope of the license of the Hospital did not contemplate "the practice of medicine" nor "the practice of professional nursing" under Colorado statutes; that the Nurse could act only under the direction of a licensed physician; that under the U. S. Food, Drug and Cosmetic Act (21 U.S.C.A., Sec. 353) the drug tetracycline was limited to "use under the professional supervision of a practitioner licensed by law to administer such drug"; and that the Nurse was "obeying instructions of a physician" and subserving "him in his ministrations to the patient" when she administered the injection of tetracycline.

I.

The trial court's order granting the motion for summary judgment in favor of the Hospital refers to the complaint, answers to interrogatories, responses to requests for admissions, the 1957 Professional Nursing Practices Act, "other pertinent statutes and decisions of the Colorado Supreme Court," and the court's findings mentioned above. The trial court also made a specific finding in the order granting summary judgment of dismissal that the injection given Lisa "was on the specific instruction of her attending physician which specified what medication was to be administered, to whom, how often, when and how." The order then states: "Upon the foregoing admitted and material facts, the Court concludes that the October 12, 1965 Motion of Defendant,

Community Hospital Association, for Summary Judgment of Dismissal with Prejudice should be and is hereby granted."

There follows the judgment of dismissal. While it is apparent that the trial court's attention was directed toward the respective relationships of the Nurse to the Hospital and to the Doctor, it did not state specifically the reason or theory underlying the judgment.

█ The principal argument of counsel for the plaintiffs and the Hospital are directed toward the question as to whether the doctrine of *respondeat superior* should be applied to the Hospital for the act of the Nurse. We have concluded that the rule of *respondeat superior* should be applied to the Hospital and to reverse so far as it is concerned. As a preface to our enunciation in this respect, it is well to review some of the decisions of this court relating to the liability of hospitals.

In *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 P. 22, it was held that judgment may be obtained against a charitable corporation for a tort, but that no property held in a charitable trust can be taken under execution upon the judgment.

In *Brown v. St. Luke's Hospital Association,* 85 Colo. 167, 274 P. 740, this court purported to follow *St. Mary's Academy,* although this occasions a little difficulty in reconciling this with the result in *Brown,* which was to affirm the trial court's dismissal of the action for the reason that all of the hospital's property was held in trust. In any event, *O'Connor v. Boulder Colorado Sanitarium Association,* 105 Colo. 259, 96 P.2d 835, 133 A.L.R. 819, followed *St. Mary's Academy.* There the sanitarium pleaded that it was a charitable corporation and the plaintiff replied that it carried liability insurance. A demurrer addressed to the replication was sustained and this court reversed, stating that the charitable institution might be liable for the tortious acts of its agents and any judgment would have to be satisfied from sources other than its trust funds, *e.g.,* from insurance. *Hemen-*

way v. Presbyterian Hospital Ass'n., 161 Colo. 42, 419 P.2d 312, made no change in the law.

We can, therefore, assume in the instant case that the trial court did not grant summary judgment in favor of the Hospital because of its finding that it is a charitable corporation.

In *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372, there was involved alleged negligence by surgeons in leaving a gauze pad inside the plaintiff. This court affirmed dismissal of the action insofar as it related to the hospital involved, stating that a hospital could not be licensed to practice medicine and surgery; that the relation between doctor and patient is personal; that a hospital is powerless to command or forbid any act by staff doctors it employs in the practice of their profession; and that, unless it employs those whose lack of skill is known or should be known to it or by some special conduct or neglect makes itself responsible for their malpractice, it cannot be held liable therefor. To the same effect are *Beadles v. Metayka*, 135 Colo. 366, 311 P.2d 711, and *Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944. In *Beadles* the plaintiff, while under anesthetic and prior to commencement of surgery, fell off the operating table. It was held that the surgeon had assumed command and responsibility and that, therefore, the doctrine of *respondeat superior* did not apply to the hospital with respect to any negligence on the part of the hospital orderly who was in the operating room. In *Moon* it was pointed out that the respective licenses to practice medicine and to operate a hospital authorize related but different activities. It was held that the employment by a hospital of doctors on its staff does not make it liable for neglect in the discharge of their professional duty, as the hospital is powerless to command or forbid any act by them in the practice of their profession, and that a licensed physician is the principal when performing medical services in a hospital.

This brings us to *St. Luke's Hospital Association v.*

*Long,* 125 Colo. 25, 240 P.2d 917, 31 A.L.R.2d 1120. There, during the early morning hours of the day following a tonsillectomy and adenoidectomy, the body of a three-year-old boy slipped through the rails of his hospital bed, his head was caught, and he strangled. It was held that any negligent acts of the nurse employed by the hospital were administrative acts, as distinct from professional services, and might be the basis for liability of the hospital. While counsel for the Hospital here states in his brief that the ruling of *St. Luke's Hospital* was that a hospital is not responsible for acts of the nurse when performing professional services or obeying instructions of a physician, we do not so interpret the opinion. Mr. Justice Stone there stated, "We are not concerned whether a nurse, in treating a patient professionally, is acting as a servant of the hospital."

It has been ably argued that, since this Court has held that *respondeat superior* does not apply to doctors for the reason that hospitals are not licensed to practice medicine, it follows that *respondeat superior* does not apply to professional acts of nurses since hospitals are not licensed to practice nursing. It appears that the matter of *respondeat superior* with respect to a nurse acting in professional capacity heretofore has not been before this Court. We feel that a distinction should be made between the "doctor" cases above mentioned and the "nurse" case, and a different rule applied.

Of particular interest are the 1914 opinion in *Schloendorff v. Society of New York Hospital,* 211 N.Y. 125, 105 N.E. 92, 52 L.R.A. (N.S.) 505, and the 1957 opinion in *Bing v. Thunig,* 2 N.Y. (2d) 656, 143 N.E.2d 3, 163 N.Y.S.2d 3, which overruled *Schloendorff.* In *Schloendorff,* Judge Cardozo, speaking for the Court of Appeals of New York, ruled that nurses in treating a patient are carrying out the orders of physicians, to whose authority they are subject, and are not servants of the hospital.

In *Bing* hospital nurses were aware that tincture of zephiran, an alcoholic antiseptic painted on the patient's

back prior to surgery, was potentially dangerous. They had been instructed to exercise care to see that none of this fluid dropped on linen, to inspect linen and to remove any that had become so stained. The fluid reached the sheeting underneath the patient, but the nurses did not discover or attempt to discover this and as a result the patient was severely burned when the sheeting caught fire from an electric cautery. It was there stated:

"Following Schloendorff v. Society of New York Hosp., 211 N.Y. 125, 105 N.E. 92, 52 L.R.A., N.S., 505, a body of law has developed making the liability of a hospital for injuries suffered by a patient, through the negligence of its employees, depend on whether the injury-producing act was 'administrative' or 'medical.' The wisdom and workability of this rule exempting hospitals from the normal operation of the doctrine of *respondeat superior* have in recent years come under increasing attack. Decision in the present case calls upon us to say whether the rule should longer endure.

\* \* \* \* \*

"In the action thereafter brought against the hospital and the surgeon to recover for the injuries suffered, there was a verdict against both. As to the hospital, with whose liability we are alone concerned, the court charged that that defendant could be held liable only if plaintiff's injuries occurred through the negligence of one of its employees while performing an 'administrative,' as contrasted with a 'medical,' act. Upon appeal, the Appellate Division by a closely divided vote reversed and dismissed the complaint. The majority of three, reasoning that the application of the antiseptic was in preparation for the operation and, therefore, part of the operation itself, concluded that the injury resulted from a 'medical' act.

\* \* \* \* \*

"But, contends the hospital, such negligence occurred during the performance of a 'medical' act and, accord-

ingly, under the so-called Schloendorff rule, the doctrine of *respondeat superior* may not be applied to subject it to liability. The difficulty of differentiating between the 'medical' and the 'administrative' in this context, highlighted as it is by the disagreement of the judges below, is thus brought into sharp focus.

"That difficulty has long plagued the courts and, indeed, as consideration of a few illustrative cases reveals, a consistent and clearly defined distinction between the terms has proved to be highly elusive. Placing an improperly capped hot water bottle on a patient's body is administrative (Iacono v. New York Polyclinic Med. School & Hosp., 296 N.Y. 502, 68 N.E.2d 450), while keeping a hot water bottle too long on a patient's body is medical (Sutherland v. New York Polyclinic Med. School & Hosp., 298 N.Y. 682, 82 N.E.2d 583). Administering blood, by means of a transfusion, to the wrong patient is administrative (Necolayff v. Genesee Hosp., 296 N.Y. 936, 73 N.E.2d 117), while administering the wrong blood to the right patient is medical (Berg v. New York Soc. for Relief of Ruptured & Crippled, 1 N.Y.2d 499, 154 N.Y.S.2d 455, 136 N.E.2d 523, reversing 286 App. Div. 783, 146 N.Y.S.2d 548). Employing an improperly sterilized needle for a hypodermic injection is administrative (Peck v. Charles B. Towns Hosp., 275 App. Div. 302, 89 N.Y.S.2d 190), while improperly administering a hypodermic injection is medical (Bryant v. Presbyterian Hosp. in City of N.Y., 304 N.Y. 538, 110 N.E.2d 391). Failing to place sideboards on a bed after a nurse decided that they were necessary is administrative (Ranelli v. Society of N. Y. Hosp., 295 N.Y. 850, 67 N.E.2d 257), while failing to decide that sideboards should be used when the need does exist is medical (Grace v. Manhattan Eye, Ear & Throat Hosp., 301 N.Y. 660, 93 N.E.2d 926).

"From distinctions such as these there is to be deduced neither guiding principle nor clear delineation of policy; they cannot help but cause confusion, cannot help but

create doubt and uncertainty. And, while the failure of the nurses in the present case to inspect and remove the contaminated linen might, perhaps, be denominated an administrative default, we do not consider it either wise or necessary again to become embroiled in an overnice disputation as to whether it should be labeled administrative or medical. * * *

\* \* \* \* \*

" * * * For example, the nurse, regarded as an independent contractor when she injures a patient by an act characterized as medical, is considered an employee of the hospital, entitled to compensation, if she should happen to injure herself by that very same act. (Bernstein v. Beth Israel Hosp., 236 N.Y. 268, 140 N.E. 694, 30 A.L.R. 598.) Further, in holding the city responsible for injuries sustained through the carelessness of members of the staff of a city hospital, not only did we recognize that they were employees, to whom the doctrine of *respondeat superior* applies, but we noted the anomaly of treating as independent contractors 'persons, who by all other tests are clearly employees'. Becker v. City of New York, supra, 2 N.Y.2d 226, 235, 159 N.Y.S. 2d 174, 183, 140 N.E.2d 262, 267; and cf. Mrachek v. Sunshine Biscuit, 308 N.Y. 116, 123 N.E.2d 801.

\* \* \* \* \*

"The doctrine of *respondeat superior* is grounded on firm principles of law and justice. Liability is the rule, immunity the exception. It is not too much to expect that those who serve and minister to members of the public should do so, as do all others, subject to that principle and within the obligation not to injure through carelessness.

\* \* \* \* \*

"Hospitals should, in short, shoulder the responsibilities borne by everyone else. There is no reason to continue their exemption from the universal rule of *respondeat superior*. The test should be, for these institutions, whether charitable or profit-making, as it is for every

other employer, was the person who committed the negligent injury-producing act one of its employees, and, if he was, was he acting within the scope of his employment."

█ If we were to rule that *respondeat superior* does not apply because the hospital is not licensed as a Nurse, then it would seem to follow that an airline should not be liable for the negligence of its pilot because the airline is not licensed to fly an aircraft. This and other examples are given in *Bing v. Thunig, supra.* The Hospital was the employer of the Nurse. Only it had the right to hire and fire her. Only it could assign the Nurse to certain hours, certain areas and certain patients. There was no choice in the Doctor or the plaintiffs as to the identity of the nurses who would serve Lisa. In this day and age a hospital should be responsible for the acts of its nurses within the scope of their employment, irrespective of whether they are acting "administratively" or "professionally." See *Rice v. California Lutheran Hospital,* 27 Cal.2d 296, 163 P.2d 860, and *Dickerson v. American Sugar Refining Co.,* 211 F.2d 200.

Some of the authorities mentioned, and others, make no distinction in application of the rule of *respondeat superior* to hospitals between employed nurses and employed doctors. Expressly, this opinion relates only to nurses. Also, it should be borne in mind that this decision relates only to the case in which the nurse acts out of the presence of the doctor.

II.

█ Plaintiffs, not too energetically, argue that the doctrine of *res ipsa loquitur* be applied against the Hospital. They cite cases from other jurisdictions in which the doctrine has been so applied, but no Colorado decision involving a hospital. It appears that usually when the doctrine is applied to a hospital, the cause of the injury is a mystery and there is a reasonable and logical inference that agents of the hospital were negligent and that such negligence caused the injury. See *Quintal*

*v. Laurel Grove Hospital,* 62 Cal.2d 154, 397 P.2d 161, 41 Cal. Rptr. 577. Here, there is no uncertainty as to the cause of the injury. The plaintiffs, Hospital and Doctor concede that it resulted from the injection into or near the sciatic nerve. Under such circumstances the doctrine is not applicable. *Shutt v. Kaufman's, Inc.,* 165 Colo. 175, 438 P.2d 501.

In *Hospital Association v. Long, supra,* it is stated:

"The third challenge is to the instruction of the court applying the doctrine of res ipsa loquitur. Plaintiffs were unable to testify as to the actual cause of death. Defendants by their broad denial would have made applicable the rule of res ipsa had no specific proof as to cause of death been produced. *Meyer v. McNutt Hospital,* 173 Calif. 156, 159 Pac. 436. However, the nurse who was on duty on this hospital floor, and who first found and removed David's body, testified positively as to the cause of death. Her testimony was corroborated by physicians who examined the body and was not challenged. By such affirmative evidence the defendant explained and made known the cause of the death and disclosed all its knowledge and means of information as to the accident. The plaintiffs thereafter had equal knowledge and means of information and the res ipsa doctrine could no longer be invoked. The court erred in giving the instruction over defendants' objection. *Yellow Cab Company v. Hodgson,* 91 Colo. 365, 14 P.(2d) 1081; *Boulder Valley Coal Company v. Jernberg,* 118 Colo. 486, 197 P.(2d) 155; *Zimmerman v. Franzen,* 121 Colo. 574, 220 P.(2d) 344."

III.

There is now considered the order dismissing the complaint as against the Doctor. The Doctor was a private physician. He left orders at the Hospital for post-operative injections to be given by any nurse on the staff of the Hospital. The plaintiffs alleged in the complaint that the Nurse gave the injection "while acting pursuant to Defendant Aumiller's directions and while

under his control and supervision." However, the Nurse stated in her answers to interrogatories that she and Lisa were the only ones present in the room at the time of the injection and that Lisa's parents were standing just outside the room. The plaintiffs concede in their brief that the Doctor was not present at the time the injection was given.

A portion of the argument of the plaintiffs is that, since the trial court sustained the motion for summary judgment in favor of the Hospital because the act of the Nurse was a doctor-directed professional one, then the Doctor must be liable because he directed the performance of the professional act. Plaintiffs continue in their brief as follows:

"The Doctor has argued against liability on the ground that not being present at the time of the administration of the drug, he could exercise no 'control' and that without control there can be no liability. The difficulty with establishing vicarious liability by determining who has control is that where the employee is negligent in fact, control by a principal is a fiction. A negligent act by its very nature is unintentional, unpremeditated and unexpected. The nature of control as a legal concept is incompatible with the characteristics of a negligent act. Recognizing this, but being unwilling to depart completely from the concept of control, there has been a judicial tendency to conclude that it is not actual control that counts, but only the right of control. *Yorsten v. Pennell,* 153 A.2d 255 (Pa. 1959). See Louisell and Williams, *Trial of Medical Malpractice Cases,* at page 500 (1960). The only justification for such a refinement is an intellectual effort to make logical the whole doctrine of vicarious liability: by imposing liability upon an absent principal the notion of control becomes totally removed from any opportunity on the doctor's part to exercise control. Thus we have come to the underlying rationale of the doctrine of vicarious liability; and it can be applied with equal justification in the case at bar, to

support the liability of the doctor whose orders the nurse was following within the scope of her employment by the hospital."

The Hospital in its brief has argued that the Doctor is liable because he ordered the injection, citing *Lovejoy v. Denver and Rio Grande Railroad Co.,* 59 Colo. 222, 146 P. 263, L.R.A. 1915 E 888 and cases, 1916 E 1075, and *Sagers v. Nuckolls,* 3 Colo. App. 95, 32 P. 187. The Hospital brief continues:

"Where a servant is in the general employ of one master and in the special employ of another, the master whose *business* purpose was being carried forward by the loaned servant is responsible for the servant's tortious act under the doctrine of *respondeat superior.*"

In support of this there is cited the Restatement of the Law of Agency (2d), Section 227, p. 500. The two cases cited are not applicable to the instant case. *Jacobson v. Doan,* 136 Colo. 496, 319 P.2d 975, involved the situation of a relationship of general employer and a special employer as to one employee. The opinion quotes with approval the following statement from 56 C.J.S. 38:

" * * * The determination of whose servant an employee is in a given case depends on who has the right to control him with respect to the work in question. * * * "

It is apparent from the record that the Doctor did not have the control necessary to apply the doctrine of *respondeat superior* to him. He did not know what nurses would give the injection. The Nurse had been employed by the Hospital and was under its control and direction. The Doctor, not being present when the injection was given, had no opportunity to control its administration. His instructions that injections were to be given did not give rise to a master-servant relationship.

The Doctor's position here is vastly different from that in *Beadle v. Metayka, supra,* where it was held that in the operating room the surgeon is master, has the exclusive control of the acts of the orderly and nurse, and

is responsible for their negligence during the time that the patient is in the operating room and the surgeon is present. To the same effect is *Moon v. Mercy Hospital, supra.*

## IV.

The last assignment of error relates to the order of the trial court denying the plaintiffs' motion for production by the Hospital of an "Incident Report" prepared by the Nurse. The Hospital objected to production of the document on the ground that it was prepared for the Hospital's attorney and was protected by attorney-client privilege. After the Nurse prepared the Incident Report a copy was placed in Lisa's hospital chart, another copy went to the Hospital Administrator and a further copy went to the Director of Nurses at the Hospital. At the time of the hearing on the motion to produce, the testimony of Mr. Frank A. Buchanan, a Boulder attorney, was taken. He testified, *inter alia,* to the following effect: He had been general counsel for the Hospital for about ten years, but was not representing the Hospital in this action. Incident reports were made at the Hospital, not only during the period of his representation, but prior thereto. He had not seen the Incident Report prepared by the Nurse in this matter and was not made aware of its contents until after this action was filed. He had seen incident reports from time to time as to "various things that occur at the hospital." He recalled two or three such occasions. To see the incident report gave him "a basis for investigation of facts, to interview the doctor or interview people involved and on which, well, the incident report can give me information if there was some." He did not see all incident reports that were prepared.

Mr. Buchanan's answer to the question, "Do you know for whom these reports are made as a matter of course?" was as follows:

"Well, I know they are made for — one of the reasons for them is certainly for me to be able to advise; I sup-

pose that an attorney is part of management and in that respect you could say that it is management, but in another sense an attorney is separate counsel, so I certainly advise management, and I certainly — this is certain information that is available to them. I can't answer with honesty as to the primary purpose of it. It certainly is a tool that I use, yes, sir."

A reminder was given to all nurses by the Hospital on October 7, 1963, as follows: "Report any incident — no matter how small or unimportant it may seem — immediately to the Nurses Office, on an Incident Form, at least two copies. This includes any item lost, etc."

██ It well may be that the practice of making an incident report resulted from the advice of counsel, but it seems rather plain that these incident reports were not prepared for the attorney. Rather, they were prepared for certain administrative officials of the Hospital and they were available to the Hospital's attorney if he wished to see them. "To entitle the party to the protection accorded to privileged communications, the communications must have been made to the counsel, attorney or solicitor, acting, for the time being, in the character of legal advisor, and must be made by the client for the purpose of professional advice or aid upon the subject of his rights and liabilities." *Caldwell v. Davis*, 10 Colo. 481, 15 P. 696, 3 Am.St.R. 599. In our view the Court should have ordered the incident report to be produced, and now should do so.

The judgment of dismissal in favor of the defendant Charles L. Aumiller is affirmed. The judgment entered in favor of defendant Community Hospital Association under its motion for a summary judgment is reversed and the cause is remanded for the entry of an order overruling such motion for summary judgment and for further proceedings not inconsonant with the views hereinbefore expressed.