Bell, J.
The anesthetist in this case was a graduate of the University of Rome, Italy, and at the time he administered the anesthetic to plaintiff’s decedent was licensed to practice medicine in Italy but not in Ohio. He had first been employed by the defendant as an intern. At the time of his alleged negligent acts, he was a resident in anesthesia on the staff of the defendant.
Since the anesthetist was not licensed as a physician in Ohio at the time of the acts complained of, it would be possible to consider him as any other nonmedical employee and avoid the problems hereinafter listed. However, in order to meet head on a problem which has been inevitable since the decision in Avellone v. St. John’s Hospital, 165 Ohio St., 467, 135 N. E. (2d), 410, we prefer to consider the anesthetist as if he were a physician licensed to practice medicine in Ohio and on the staff of the hospital as a resident physician.
A review of the record in this case reveals sufficient disparity in the evidence to warrant submitting the question of liability to the jury and sufficient credible evidence to support the verdict returned by the jury. The judgment must, therefore, be affirmed if (1) the action was brought within the time limited by statute for bringing such an action and (2) the hospital is legally accountable to the plaintiff for the negligent acts of one who was employed by the hospital as a “resident in anesthesia.”
*521 It is contended on behalf of the defendant that the time within which this action must be brought is controlled by Section 2305.11, Eevised Code, which reads, in part, as follows:
“An action for * * * malpractice, # * * shall be brought within one year after the cause thereof accrued * *
In support of its position, the defendant has cited to us several decisions of Courts of Appeals to the effect that actions against physicians and dentists by patients are actions for malpractice and not actions based on contracts. With these decisions we agree. Had plaintiff’s decedent survived the postoperative period and brought suit himself against the negligent doctor, no serious contention could be made that any other than the one-year statute of limitations would have applied.
Such is not the case here, however. This is a wrongful death action brought under and by virtue of the provisions of Section 2125.01, Revised Code. That such action is completely distinct from that which accrued to the party directly injured is well established in this state. Mahoning Valley Ry. Co. v. Van Alstine, Admr., 77 Ohio St., 395, 83 N. E., 601, 14 L. R. A. (N. S.), 893; May Coal Co. v. Robinette, Admr., 120 Ohio St., 110, 165 N. E., 576, 64 A. L. R., 441; Karr, Admr., v. Sixt, 146 Ohio St., 527, 67 N. E. (2d), 331.
The distinction between the actions was well stated by Mr. Justice Van Devanter in St. Louis, Iron Mountain & Southern Ry. Co. v. Craft, 237 U. S., 648, 59 L. Ed., 1160, 35 S. Ct., 704, where he said, citing as an authority therefor the Van Alstine case:
“Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong’ to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong. ”
The distinction is all the more pointed in the light of the fact that even though both a survivor action and a death action may be prosecuted by the same personal representative, a judg *522 ment for the defendant in one case is not a bar to a recovery in the other. May Coal Co. v. Robinette, supra.
Section 2125.02, Revised Code, so far as pertinent here, reads as follows :
“Except as otherwise provided by law, every snch [wrongful death] action must be commenced within two years after the death of such deceased person * *
It is urged by defendant that, since the General Assembly has limited the time for commencing malpractice actions to one year, it has “other-wise provided by law” for a limitation shorter than two years for a death action growing out of an alleged wrongful act by a doctor.
In resolving this question, it is necessary to look at the history of this statutory provision limiting the time for commencing a wrongful death action.
The wrongful death statute was originally enacted in Ohio on March 25, 1851 (49 Ohio Laws, 117), and provided, as to the time within which such action must be brought, “that every such action shall be commenced within two years after the death of such deceased person.”
In 1867, this court decided the case of Meisse v. McCoy’s Admr., 17 Ohio St., 225. That was an action for wrongful death which had been commenced within two years from the time of death but which was dismissed because service of summons had been made on the return day. The court held that under such circumstances the plaintiff could bring his action anew under Section 23 of the Code which permitted the refiling within one year of any action in which the plaintiff failed otherwise than on the merits.
The wrongful death statute was amended March 7,1872 (69 Ohio Laws, 22), and the amendatory act made no provision for a time limit. This section, without a time limit, was carried, as Section 6135, into the Revised Statutes of 1880, passed in 1879 and became effective January 1, 1880. However, the 1880 Revised Statutes were amended April 13,1880 (77 Ohio Laws, 207), and a limitation was again inserted which provided that “every such action shall be commenced within two years after the death of such deceased person.”
In 1894 (91 Ohio Laws, 408), Section 6134a was enacted *523 -which provided for the enforcement of a right of action for wrongful death created by the laws of another state and provided that such action must be commenced within the time prescribed by the statute of such other state. This section was amended in 1902 (95 Ohio Laws, 401), but no change was made in the limitation provision.
The wrongful death sections were then carried into the General Code of 1910 as Sections 10770 to 10773.
Section 10773 provided: ‘ ‘ Such action must be commenced within two years after the death of such deceased person.”
Section 10773, General Code, was repealed May 12, 1910 (101 Ohio Laws, 198), and the limitation was incorporated by the same act in Section 10772, General Code, which provided: “Every such action must be commenced within two years after the death of such deceased person, except as provided in Section 10773-1.” (Emphasis added.)
This same act (101 Ohio Laws, 198) contained Section 10773-1, G-eneral Code, which provided as follows:
“That in every such action for wrongful death commenced or attempted to be commenced within the time herein specified, if a judgment for the plaintiff be reversed, or if the plaintiff fail, otherwise than upon the merits, and the time limited herein for the commencement of such action has at the date of such reversal, or failure, expired, the plaintiff, or if he die and the cause of action survive, his representative may commence a new action within one year after such date. ’ ’

This Section 10778-1, General Code, was substantially the same as Section 23 of the Code (interpreted in the Meisse case, supra, and by that case made applicable to wrongful death actions) except that it toas applicable specifically to wrongful death actions.

A further amendment of the wrongful death statute was made in 1913 (103 Ohio Laws, 116), but such amendment did not change the wording of the limitation section.
The next amendment of these sections occurred in the general revision of the Probate Code in 1931 when Section 10772 became 10509-167, General Code (114 Ohio Laws, 438). It was in this revision that for the first time the phrase, “except as otherwise provided by law, ’ ’ appeared. As enacted in 1931, the pertinent part of that section read:
*524 “Except as otherwise provided by law, every such action must be commenced within two years after the death of such deceased person.”
No further change appears until the revision of .1953 when such section became Section 2125.02, Revised Code, at which time the phrase, “except as otherwise provided by law,” was omitted from the original enactment but was immediately replaced therein by an amendment enacted on August 12, 1953 (125 Ohio Laws, 981).
The wrongful death action is a special statutory action which does not exist at common law. As a condition to the action, and not as a statute of limitations,- a time limitation is set within which the action must be brought. The action being a statutory one relating to a specific type of cause, i. e., wrongful death, the phrase, “except as otherwise provided by law,” can only relate to other provisions relating to death. And the only other provisions relating to death actions are those contained in the wrongful death statute itself, namely, the provisions relating to actions arising in other states and the saving provision. It is to these that the phrase must necessarily relate.
The foregoing examination of the history of these sections clearly illustrates the legislative intent. The phrase, “except as otherwise provided by law,” appeared for the first time in 1931 after the insertion in the act of the saving provision and the section relating to actions arising out of this state. It actually took the place of the phrase, “except as provided in Section-10773-1, General Code,” when the Probate Code was revised in 1931.
An examination of the history of the provisions relating to limitation of actions even more clearly points out that the insertion of the phrase, “except as otherwise provided by law,” merely took the place of, ‘ ‘ except as provided in Section 10773-1 of the General Code,” and relates to such section. Since 1788, statutes relating to limitations of actions have existed in this state (1 Laws of the Northwest Territory, 25). More specifically, the statute relating to malpractice has existed since 1894 (91 Ohio Laws, 29). Yet it was not until 1931, in the revision of the Probate Code, that the present wording was inserted in the wrongful death statute.
*525 Beason, as well as statutory history, impels us to the same conclusion. It is, of course, provided by law that a cause of action based upon a contract must be brought within six years. But should an action be brought against a carrier for a claimed breach of contract to safely transport which resulted in death, such action certainly would be controlled by the wrongful death limitation rather than the statute o'f limitations on contracts. Andrianos v. Community Traction Co., 155 Ohio St., 47, 97 N. E. (2d), 549. There is no more reason for shortening the time within which a death action may be brought because of a shorter limitation imposed on a different action than there is for lengthening it because of a longer limitation allowed in another action.
The death of plaintiff’s decedent occurred within one year of the alleged negligent act. It is not necessary, therefore, for us to decide whether, had he lived for more than one year after such act without having brought a malpractice action in his own behalf, his personal representative could have brought an action for wrongful death based on such negligent act. Suffice it to say that the alleged negligent act was such as would have, if death had not ensued, entitled decedent to maintain an action. A cause of action for wrongful death thus exists in his personal representative, which cause of action can not be defeated merely by reason of the bar of limitation which would have been applicable to decedent’s action.
Having concluded that the action was brought within time, we must next consider whether the defendant hospital may be held accountable for the negligent acts of one who was employed by that hospital as a “resident in anesthesia.” And for the purpose of this decision, it must be conceded that the particular employee here was engaged in the commission of a “medical” act rather than an “administrative” one.
In the Avellone case, supra (165 Ohio St., 467), this court held that a corporation not for profit, which has for its purpose the maintenance and operation of a hospital, is, under the doctrine of respondeat superior, liable for the torts of its servants. Specifically reserved from that decision, however, was the question whether “persons working in a hospital, such as doctors and nurses, under circumstances where the hospital has no *526 authority or right of control over them, can bind the hospital by their negligent actions.” A similar reservation must, of course, be made here.
The leading case in this country which held that there was immunity for the “medical” acts of hospital employees was Schloendorff v. Society of New York Hospital, 211 N. Y., 125, 105 N. E., 92, 52 L. R. A. (N. S.), 505, Ann. Cas., 1915C, 581. That case, however, was specifically overruled by the New York Court of Appeals in Bing v. Thunig, 2 N. Y. (2d), 656, 143 N. E. (2d), 3.
Following the adoption of the Schloendorff rule, a series of cases in New York alone clearly demonstrated the unworkability of any rule which attempts to distinguish between “medical” acts and “administrative” acts. Placing an improperly capped hot water bottle on a patient’s body was held to be administrative. (Iacono v. New York Polyclinic Medical School and Hospital, 296 N. Y., 502, 68 N. E. [2d], 450.) But keeping a hot water bottle too long on a patient’s body was held to be medical. (Sutherland v. New York Polyclinic Medical School and Hospital, 298 N. Y., 682, 82 N. E. [2d], 583.) Administering blood, by means of a transfusion, to the wrong patient was declared administrative (Necolayff, Admr., v. Genesee Hospital, 296 N. Y., 936, 73 N. E. [2d], 117), whereas administering the wrong blood to the'right patient was medical (Berg v. New York Society for Belief of Ruptured and Crippled, 1 N. Y. [2d], 499, 136 N. E. [2d], 523). Using an improperly sterilized needle for a hypodermic injection was administrative (Peck v. Charles B. Towns Hospital, 275 App. Div., 302, 89 N. Y. Supp. [2d], 190), whereas improperly administering a hypodermic injection was medical (Bryant v, Presbyterian Hospital in City of New York, 304 N. Y., 538, 110 N. E. [2d], 391). Failing to place sideboards on a bed after a nurse decided that they were necessary was held to be administrative (Ranelli v. Society of New York Hospital, 295 N. Y., 850, 67 N. E. [2d], 257), whereas failing to decide that sideboards should be used when the need did exist was held to be medical (Grace v. Manhattan Eye, Ear and Throat Hospital, 301 N. Y., 660, 93 N. E. [2d], 926).
Recognizing this inconsistency, the New York court in the *527 opinion by Judge Fuld in the Bing case, supra, the reasoning of which we find impelling in our judgment herein, said:
“Hospitals should, in short, shoulder the responsibilities borne by everyone else. There is no reason to continue their exemption from the universal rule of respondeat superior. The test should be, for these institutions, whether charitable or profit-making, as it is for every other employer, was'the person who committed the negligent injury-producing act one of its employees and, if he was, was he acting within the scope of his employment.” (Emphasis added.)
The nature of the act done, whether it is administrative or medical, cannot justify a difference in the legal theory of liability. The test should be, simply, was the act done performed in the service of the employer and was the act done in the scope and course of the employee’s duties. Obviously, such a test will, so far as a hospital is concerned, relieve from, or subject to, liability in exactly the same manner and according to the same rules as any other employer is relieved or subjected.

Judgment affirmed.

Zimmerman, Taet, Matthias, Herbert and Peok, JJ., concur.
Weygandt, C. J., not participating.