CHARMAINE NORR, Respondent, v ENRIQUE SPIEGLER, Defendant-Appellant and Third-Party Plaintiff-Appellant. CITY OF NEW YORK et al., Third-Party Defendants-Respondents. (And Another Action.)

First Department, March 24, 1977

*Norman Bard* of counsel *(Steven C. Mandell* with him on the brief; *McAloon, Friedman, Mandell, Malang & Carroll,* attorneys), for defendant-appellant and third-party plaintiff-appellant.

*Bernard Burstein* of counsel *(L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for third-party defendant and fourth-party plaintiff.

SILVERMAN, J. In this malpractice action against defendant and third-party plaintiff Dr. Enrique Spiegler, Dr. Spiegler interposed a third-party claim against the City of New York and against the New York City Health and Hospitals Corporation ("NYCHHC"). By cross notice of motion, Dr. Spiegler asked for summary judgment against said third-party defendants, and further, that said third-party defendants be directed to save him harmless and assume his defense. The cross motion for summary judgment was denied and movant appeals.

Subdivision 1 of section 50-d of the General Municipal Law provides that: "[E]very municipal corporation shall be liable for, and shall assume the liability, to the extent that it shall save him harmless, of any resident physician, physician * * * rendering medical * * * services of any kind to a person without receiving compensation from such person in a public institution maintained in whole or in part by the municipal corporation * * * for damages for personal injuries alleged to have been sustained by such person by reason of the malpractice of such resident physician, physician * * * while engaged in the rendition of such services."

The services out of which the malpractice action arose are alleged to have been rendered in December, 1970 at the Gouverneur Ambulatory Clinic ("GAC"), which is conducted at what was formerly the Gouverneur Hospital of the City of New York. The chief issue argued by the parties is whether GAC is a "public institution maintained in whole or in part by the municipal corporation" within the meaning of the statute.

The Gouverneur Hospital was formerly a city hospital. The clinic is run in the physical premises of what was formerly the Gouverneur Hospital. In or about 1968, the city ceased to run Gouverneur Hospital as a city hospital. It did, however, enter into an agreement with Beth Israel Medical Center, providing in part in one of its amendments as follows:

" '1) The City hereby retains the Affiliate and the Affiliate agrees for the period beginning July 1, 1968 and terminating on November 30, 1969 to establish, supervise and maintain, with adequate staff and equipment, under the general supervision of the Commissioner or his duly designated representative, a clinic which shall be known as the 'Beth-Israel Gouverneur Ambulatory Care Unit' (hereinafter referred to as the 'Ambulatory Care Unit') which shall include an Out-Patient Department, Emergency Room and Home Care Service.

"The medical services and administrative operation of the Center shall be subject to general supervision of the Commissioner or his duly designated representative.' "

For the period here involved, December, 1970, the operation was covered by a contract dated July 1, 1970. Although this contract nowhere refers explicitly to the GAC, it is conceded by the city that the avowed purpose, according to the Board of Estimate's minutes, was the "continuation" of the "Gouverneur Health Program." That contract stated in part:

"WHEREAS, it is incumbent upon the City to provide health and medical care services for its citizens * * *

"(1) The Hospital agrees, for the nine month period beginning July 1, 1970 and ending March 31, 1971, under the general supervision and control of the Commissioner or his duly delegated representative, to provide the professional and ancillary staff, equipment, supplies, facilities and premises necessary for the operation of and to continue to conduct and operate an ambulatory services program at the outpatient and/or emergency departments or clinics of the Hospital. * * *

"(2) The operation of the ambulatory services program shall be performed in a competent manner by the Hospital and to the best of its ability and shall be performed under the general supervision and control of the Commissioner. * * *

"(b) *Ultimate Responsibility of the Commissioner* The Commissioner shall be ultimately responsible for the policies, procedures, and standards to govern the operation of ambulatory services".

The contract further provides that the city shall pay to Beth Israel a sum not to exceed $2,824,200 "to cover the deficit which it is anticipated will be incurred by the Hospital in the operation of its ambulatory care services". In addition although the July 1, 1970 contract does not so provide, it is conceded that pursuant to the continuing provisions of the earlier contract, the city charged no rent for the use of the space and equipment at Gouverneur Hospital and agreed to and did furnish plant maintenance and utility services.

We thus have an institution whose deficits are to be met by the city, on physical premises that were formerly a city hospital and that are identified in the public mind as a city institution, still furnished and physically maintained by the city, under contracts in which in one version "the City * * * retains" Beth Israel to render services and in the later version recognizes the duty of "the City to provide health and medical care services for its citizens" all "under the general supervision and control of the Commissioner," a city official.

While the phrase "a public institution maintained in whole or in part by the municipal corporation" is not defined in the statute, and there is obviously room for differences of opinion on the subject, we think that in view of the particular circumstances, arrangements, and history of the GAC, that facility may fairly be considered a "public institution maintained * * * in part by the municipal corporation."

The next question is whether Dr. Spiegler falls within the class of physicians intended to be covered within the statute. We think he does. He is a "physician * * * rendering medical * * * services * * * to a person without receiving compensation from such person in a public institution".

*Schmid v Werner* (277 App Div 520 [1950], affd 303 NY 754 [1952]) held that the then statute was inapplicable to a physician who was on the paid staff of the city even though no charge for the medical services was made to the patient by the city. But the statute at that time was limited to physicians

rendering services "gratuitously." By chapter 897 of the Laws of 1956 the statute was amended so as to strike the word "gratuitously" and to add the qualification "without receiving compensation from such person". Thus the critical fact becomes not whether the physician is paid by someone, but whether the patient pays the physician. It appears to be undisputed that Dr. Spiegler did not receive any compensation from plaintiff for his services.

Accordingly, the statute requires the city to indemnify Dr. Spiegler.

However, Dr. Spiegler is not entitled to indemnification under section 50-d of the General Municipal Law from third-party defendant New York City Health and Hospitals Corporation. To begin with, it does not appear that NYCHHC has anything to do with the GAC. It is not a party to any of the contracts relating to GAC. Further, section 50-d only applies to a "municipal corporation," and it has been held that NYCHHC is not a municipal corporation. *(Bender v Jamaica Hosp.,* 40 NY2d 560 [1976].) While the provisions of section 50-e of the General Municipal Law have been made applicable to the NYCHHC (see New York City Health and Hospitals Corporation Act, § 20; L 1969, ch 1016, as amd; *Matter of Smalls v New York City Health and Hosps. Corp.,* 55 AD2d 537 [1976]), our attention has not been called to any statute making section 50-d applicable.

Accordingly, the order should be modified, on the law, so as to grant the motion of defendant and third-party plaintiff against the City of New York to the extent of adjudicating that the city is liable for and shall assume the liability to the extent that it shall save third-party plaintiff harmless for damages for personal injuries alleged to have been sustained by plaintiff by reason of alleged malpractice of said third-party plaintiff while engaged in the rendition of medical services to plaintiff at the Gouverneur Ambulatory Clinic, and otherwise affirmed, without costs.

STEVENS, P. J. (dissenting in part). I am in accord with so much of the majority opinion as finds that Dr. Spiegler is not entitled to indemnification from New York City Health and Hospitals Corporation under section 50-d of the General Municipal Law. However, I would go further and find a similar lack of liability with respect to the City of New York (the City).

The facts are fairly stated in the majority opinion and will not be restated at length. However, reference to facts deemed pertinent will be made as occasion warrants.

As noted by the majority, the City is not operating Gouverneur Hospital as a city hospital, nor is it operating the Gouverneur Ambulatory Clinic (GAC) where the alleged malpractice occurred. Both are being operated by or under the auspices of Beth Israel Medical Center (Beth Israel) pursuant to contract with the City. The City derives no financial benefit from the contract, but is obligated under the contract either to cover or reimburse Beth Israel for any deficit incurred. The City owns, provides and maintains the physical plant which, until 1968, the City operated as a municipal hospital and clinic. Beth Israel is obligated to provide medical care and services and maintain standards "under the general supervision and control of the Commissioner [of Hospitals]", a city official.

Dr. Spiegler, who treated plaintiff, was an assistant attending surgeon in the department of surgery of Beth Israel, with the right and privilege to admit and treat his own private patients in return for which he agreed to treat patients in the GAC. He received some compensation from Beth Israel for the services rendered by him to patients treated in the GAC; however, he did not receive compensation directly from the person treated. Nor as an assistant attending surgeon does he receive a salary from Beth Israel.

Under the July 1, 1970 agreement it was provided that Beth Israel had the right to employ, supervise and discharge designated personnel, and that such persons were employees of the hospital, and not the City. Dr. Spiegler seems to fit into the designated category. Funds for the operation of the ambulatory services came in part from funds made available by the State under the "Ghetto Medicine" Law; from the City; from those patients able to pay; and, from Medicaid, Medicare, etc. Furthermore, under such agreement Beth Israel undertook to be solely responsible for and hold the City harmless from all claims resulting, *inter alia,* from the negligence or malpractice of its employees, agents or independent contractors.

With regard to his treatment of plaintiff at GAC, Dr. Spiegler contends that, for the purpose of applying section 50-d of the General Municipal Law, he must be deemed an employee of the City and therefore entitled to be defended and indemnified against plaintiff's claim. Whether his contention

is correct depends upon whether GAC is a "public institution maintained in whole or in part" by the City and whether the fact that he rendered his services "without receiving compensation from such person" entitles him to be defended and held harmless by the City.

The term "institution" as it appears in the statute may fairly be equated with the term "hospital" as a public or private place maintained for the purpose of providing medical or surgical treatment to ill, injured or otherwise afflicted persons. The consideration for Dr. Spiegler's rendition of services in the GAC was some compensation from Beth Israel plus the privilege of admitting and treating his own private patients at Beth Israel. While the individual clinic patient did not compensate Dr. Spiegler directly, his services could hardly be considered gratuitous.

In *Schmid v Werner* (277 App Div 520, 522 [1950], affd 303 NY 754) this court noted "The law is settled that in the absence of statute the relation between a hospital and the physicians and nurses who serve there is not one of master and servant, and that it is not liable for their negligence in the treatment of patients [citations omitted]." The object of section 50-d, as it then read, was to protect the doctor or specialist working gratuitously in city hospitals. "If the doctor is paid or to be paid by the city, then, regardless of whether the patient reimburses the municipality, he may sue the doctor untrammeled by section 50-d of the General Municipal Law [citations omitted]." *(Schmid v Werner, supra,* p 524.) Thus, if we apply similar reasoning to the instant case the statute would not apply for the added reason that the City has no voice in the hiring, discharge or working conditions of Dr. Spiegler and others similarly situated.

The majority rejects such reasoning and points out that the statute as amended (L 1956, ch 897) struck the word "gratuitously" and substituted therefor the language "without receiving compensation from such person" (i.e., the person treated). The Medical Society of the State of New York was a sponsor of the 1956 amendment which it felt would operate "to restore the interpretation which was thought to be the correct one prior to the decision in the *Schmid* case, basing the right to indemnity on the fact that the physician renders services to a person "without receiving compensation from such person". In its memorandum in support of the amendment the Society stated that the purpose of the section "is to protect physicians

from the high exposure to civil malpractice liability incident to doing professional work in a municipal hospital, especially in New York City. The section fails to protect those who need and deserve such protection the most—the intern and resident physicians who receive a nominal honorarium, for their services which does not put them in a position to afford malpractice insurance even if they could buy it (malpractice indemnity insurance is not readily available to interns and resident physicians.)" (State Medical Society Memoranda, NY Legis Ann, 1956, p 217.) It was not anticipated that the bill would cost the municipalities much, if anything. "Actually it would constitute a cheap 'fringe benefit' which would make intern, resident and other categories of physicians more available to municipal hospitals". (Id., pp 217-218.)

If we accept the general purpose as stated, then obviously the majority view would extend the scope of the statute far beyond that contemplated. Neither Beth Israel nor GAC, a part of its operation, could be termed municipal hospitals.

The question then arises whether making available a physical plant, providing for its upkeep, and financially contributing to any deficit makes GAC and its parent Beth Israel "a public institution maintained in whole or in part" by the City. I think not. Reimbursements for deficits or making available for use a city-owned building do not convert a private institution into a public institution maintained in whole or in part by the City.

Generally speaking, a private hospital, as a private membership corporation, is governed or regulated by its charter, constitution and by-laws. "Public corporations are instrumentalities of the State, founded and owned by it in the public interest, supported by public funds and governed by managers deriving their authority from the State * * * Hospitals may be established by certain municipalities. These are public hospitals * * * Corporations organized by permission of the Legislature undertake to perform similar duties. They are supported mainly through voluntary gifts. These are private corporations. That they are engaged in charitable work for the benefit of the public and thereby affected with a public interest, does not make them public corporations * * * The fact that they may receive a donation from the government to enable them to carry on their work, or funds from a city or county to care for sick and disabled indigent persons * * * does not affect their character as private institutions." (Van

*Campen v Olean Gen. Hosp.,* 210 App Div 204, 206-207 [citations omitted]; *Halberstadt v Kissane,* 31 AD2d 568, mot for lv to app den 24 NY2d 740; see, generally, Ann 37 ALR3d 669-672 (1971) as to standards for determining public or private nature of hospital; but cf. *Becker v City of New York,* 2 NY2d 226). GAC remained a private institution maintained solely by Beth Israel.

The purpose of the 1956 amendment of section 50-d in eliminating the word "gratuitously" could hardly have been to expose the City to the duty of defending and indemnifying those physicians salaried or otherwise who are substantially compensated by private institutions or are on the staff of such institutions, to whom medical malpractice insurance is readily available, merely because such persons are not directly compensated by the patient treated. "The language of the statute must be read in light of what it was intended to accomplish" *(Matter of Guardian Life Ins. Co. v Chapman,* 302 NY 226, 235). Moreover, it should be noted that, in the case before us, the patient had no relationship to the City but was related solely to Beth Israel in that Beth Israel operated the facility. All medical insurance payments etc. as well as all moneys collected from patients able to pay were collected by and paid to Beth Israel. This view of statutory application is buttressed by the contractual obligation of Beth Israel to hold the City harmless for acts of malpractice by its employees, including members of Beth Israel's medical staff.

For the aforesaid reasons I would reverse and grant summary judgment to the City dismissing the third-party complaint.

MURPHY and BIRNS, JJ., concur with SILVERMAN, J.; STEVENS, P. J., and LYNCH, J., dissent in part in an opinion by STEVENS, P. J.

Order, Supreme Court, New York County, entered on September 17, 1975, modified, on the law, so as to grant the motion of defendant and third-party plaintiff against the City of New York to the extent of adjudicating that the City is liable for and shall assume the liability to the extent that it shall save third-party plaintiff harmless for damages for personal injuries alleged to have been sustained by plaintif by reason of alleged malpractice of said third-party plaintiff while engaged in the rendition of medical services to plaintiff

at the Gouverneur Ambulatory Clinic, and otherwise affirmed, without costs and without disbursements.